IN THE MATTER OF JOSEPH E. HAYNES, MAYOR OF THE. CITY OF NEWARK.

1. The object of a statute being to establish a board of street and water commissioners, is sufficiently expressed in its title as follows: "An act concerning cities of the first class in this state, and constituting municipal boards of street and water commissioners, and defining the powers and duties of such municipal boards, and relating to municipal affairs and departments of such cities placed under the control and management of such boards, and providing for the maintenance of the same."

2. An act that alters the mode of appointing a board of municipal officers, removing them from office, and that declares that the newly-appointed officers shall have the same statutory powers that were possessed by their predecessors, is not in conflict with the constitutional clause which forbids the passing of an act which shall enact that any existing law, or any part thereof, shall be applicable, except by inserting it in any such act.

3. Population is a proper basis for the classification of municipalities. with respect to laws that establish boards to manage streets and the public water works.

By the petition of Joseph E. Haynes, mayor of the city of Newark, it appeared that a dispute or controversy existed in said city concerning the rights and title of certain persons therein mentioned, appointed to office by said mayor under the provisions of an act entitled "An act concerning cities of the first class in this state, and constituting municipal boards of street and water commissioners therein, and defining the powers and duties of such municipal boards, and relating to the municipal affairs and departments of such cities placed under the control and management of such boards, and providing for the maintenance of the same," approved March 28th, 1891.

By the provisions of said act a special term of the Supreme Court was appointed to be held on the 2d day of June, 1891, to hear and determine such action, proceedings, dispute and controversy.

Argued before BEASLEY, CHIEF JUSTICE, and Justices VAN SYCKEL, KNAPP and GARRISON.

For the relators, *John W. Taylor* (with whom were *Gilbert Collins* and *J. Frank Fort*).

I. *The act in question is unconstitutional and void.*

It is violative of the constitution (article IV., section 7, paragraph 4), which ordains that "every law shall embrace but one object, and that shall be expressed in the title."

(1) The title does not "express" any "object" whatever, although it purports to concern or relate to four different subjects, viz. :

(*a*) "Cities of the first class;"

(*b*) "Municipal boards of street and water commissioners therein;"

(*c*) "The municipal affairs in such cities;" and,

(*d*) "The maintenance of the same," whether the "municipal affairs," or the "municipal boards," or both, is uncertain.

(2) Declaring that an act concerns "cities of the first class," but very indefinitely expresses even the subject, while it gives not even an intimation or hint of the "object."

If it were entitled "An act providing for the incorporation of cities of the first class," or "An act to reorganize the local government of cities of the first class," it might be sufficient; because such a title intimates, if it does not clearly express, the object to be to provide for a municipal constitution and government, or to effect a change therein.

. But under the title chosen the act might enact any legislation which concerned those cities, though it might not in the most remote manner have any relation to their corporate powers or organization.

.(3) Declaring that the act relates " to the municipal affairs and departments of such cities," although the subject is stated less indefinitely, does not express or give a clew to the " object " of the act, and almost any legislation might be enacted that would relate to those cities.

(4) Neither do the second and fourth branches of. the title, viz., " constituting municipal boards," &c., and " providing for the maintenance of the same," " express " the object of the act, although possibly they may be construed as containing an implication of some of the objects.

II. *If the act is not unconstitutional for the reason suggested, the first branch of the title should be discarded, as containing no expression whatever of the object and no definite or satisfactory expression of the subject.*

The result will be that if the court considers the remaining matters stated in the title to have a " proper relation. to each other," presuppose a common scheme or object, and sufficiently express it, the provisions of the body of the act will be limited accordingly.

As the purview of the act will be restricted to only such provisions as relate to the proper functions and duties. of a " board of street and water commissioners," the provisions for investing the board with jurisdiction over matters pertaining to the health of the city, the public parks and places, and the " public docks, wharves and bulkheads and public buildings," &c. (to a large extent), will be. ineffectual and inoperative.

See section 2 of the act. *Union* ads. *Rader*, 10 *Vroom* 509.

III. *The act is in violation of the constitutional provision which ordains that "No act shall be passed that shall provide that any existing law, or any part thereof, shall be made or deemed a part of the act, or which shall enact that any existing law, or any part thereof, shall be applicable, except by inserting it in any such act."* Art. IV., § 7, ¶ 4.

*First.* Section 14 of the act is in direct violation of this constitutional provision, and is therefore null and void, if it does not render the whole act null and void.

*Second.* Section 2 of the act (the substance of which is repeated in sections 10 and 13), " defining the powers and duties of such municipal boards," and under which the defendants claim title, is also violative of the same constitutional provision, and therefore null and void.

(1) The powers and duties of these municipal boards are not defined by this section nor by any other portion of the act, except by reference to " existing laws," " special, local or private, in force in any such city of the first class aforesaid," and for that purpose making them applicable.

(2) " It is an imperfect and incomplete act of legislation," and warrants the criticism and condemnation which a similar piece of legislation received in the case of *Christie* v. *Bayonne*, 19 *Vroom* 407.

In order to find a definition of the powers and duties vested in and imposed upon these municipal boards, it must be ascertained what powers and duties are " by law " vested in and imposed upon " the board of aldermen, common council or other governing body or board of such city, or of any public aqueduct or water board or department, or of any department, civil engineer, city surveyor, commissioner, street commissioner, office or officer, clerk, servant or employe, or authority of any such city," which can be done only by examining " all laws or parts of laws, general, special, local or private, in force in any such city of the first class," alluded to in section 14, and thereby sought to be grafted on or made applicable to the act for the purpose.

The act under consideration, in Christie *v.* Bayonne, *supra,.* was entitled "An act to give certain active and exempt firemen the same advantages in respect to taxes and jury duty as now or hereafter may be allowed to members of the national' guard of this state," and enacted that all persons enrolled as active or exempt members of any fire or hose company, or hook and ladder organization, &c., who do not receive more than $150 per annum for their services, " shall be entitled to have and receive the same and no other advantages in respect to taxes and jury duty as now or hereafter may be allowed to members of the national guard of this state."

Mr. Justice Depue, in delivering the opinion of the court,. quoted the constitutional provision under consideration, and,. referring to the cases of *Campbell* v. *The Board of Pharmacy,.* 16 *Vroom* 241, and 18 *Id.* 347, and *De Camp* v. *Hibernia R. R.. Co., Id.* 43, distinguished the case of Christie *v.* Bayonne from those cases, saying : " The act now in hand does not come within range of the principle on which the cases cited were founded. It is an imperfect and incomplete act of legislation. The privileges intended to be conferred are not in any manner specified in the body of the act. No member of the legislature called upon to cast his vote on the passage of this act would be informed by inspection what particular rights or privileges were designed to be conferred, nor would the public by inspection be informed of the nature of the legislation about to be adopted."

The principle and the *ratio decidendi* of that case control' the case at bar. If such be the law in respect to an attempt to confer a mere privilege or advantage by referring to an " existing law," and thereby endeavoring to make it applicable, *a fortiori*, it must be the law in attempting, as it is. attempted, by the act under consideration, to confer on these newly-created municipal boards " all the powers, duties and authority " vested by law (*i. e.*, " laws or parts of laws, general, special, local or private, in force in any such city "), in " the board of aldermen, common council or other' governing body or board of such city, or of any public aqueduct or

water board or department, or of any department, civil engineer, city surveyor, commissioner, street commissioner, office or officer, clerk, servant or employe or authority of any such city."

.It would require the legislature to devote its whole session, with the aid of *Hood's Index* and the assistance of many counsel learned in the law, to ascertain the nature, extent and variety of the " powers, rights, duties and authority" "by law vested in " that procession of high and low public functionaries, headed by "the board of aldermen;" and as for the public, they would never be informed of the nature of the legislation about to be adopted.

But the learned counsel for the defendants, evidently appreciating the force of the constitutional objection, have, in order to overcome it, ingeniously suggested that the act merely " transfers" existing powers from old functionaries to those newly created; that powers are not really conferred upon them, and that the latter functionaries are merely "substituted " for the former, which was the main object.

But that object is not expressed in the title of the act, and if it were, it would make no difference.

Calling it a " transfer of powers " does not change or disguise the real nature of the thing itself.  The truth is, that the act, as its title shows, constitutes or creates certain boards, and purports to define their powers, and the second section purports to vest in or confer upon them certain powers by referring to existing laws, in violation of the constitution. If, as suggested, the powers are not really conferred, but are merely transferred, then the boards do not possess these powers.  I agree that the powers are not conferred, because the attempt to confer them was in violation of the constitution.

(3) The provisions in section 1, in relation to the powers, duties, compensation, &c., of the numerous officers enumerated therein, are void for the same reason

IV. *The act also violates the constitutional provision that "no general law shall embrace any provision of a private, special or local character."* Art. IV., § 7, ¶ 4.

The act contains many provisions of a local and special character, which, being void and inoperative, materially lessen what few imperfect powers and rights, if any, remain under the operation of the constitutional provision last before referred to.

*First.* The provision in section 1 for the selection and employment of counsel, his qualifications, term of office, duties, power and compensation, is applicable to only one of the two cities.

See section 1 of the act.

*Second.* The provision in section 3 for an assessment for repairing, if not that for repaving also, is void.

*Third.* The provisions of sections 4, 6 and 16 for appropriations "by the board having charge and control of the finances in any city," can apply only to Jersey City, as Newark has no such board.

*Fourth.* Section 8 can apply only to Jersey City, because there is in Newark no "board of commissioners of assessments, common council or other board or body of such city charged by law with the making of such assessment," as in that section mentioned.

*Fifth.* Section 22 is special legislation applicable only to Jersey City, as it seeks to limit the powers of the board in that city alone, by requiring the concurrence of the board of finance, in order to the validity of any "motion, resolution or order, providing for the making of any improvement or the doing of any work, or procuring any materials, or the purchase of any property, or for the employment of any person whose compensation may exceed $1,000 per annum, or for the payment of any sum of money exceeding $2,000." *Pamph. L.* 1874, *p.* 507, § 9.

It will be seen that the powers of the Jersey City board are ineffectual without the positive concurrence of the board of

finance in that city, whereas in Newark there is no such limitation.

As all the powers which the board of street and water commissioners of cities of the first class are such, and such only, as are conferred upon and vested in them by the act, and as the act has conferred on the board of one city full and absolute power, and on the board of the other city power limited and ineffectual without the concurrent action of another board, it follows inevitably that the law is local and special, as to a vital and fundamental provision, and must therefore be held unconstitutional and void.

V. The legislative purpose in the enactment of section 2— a vital section of the act—is so uncertain, contradictory and confused, that it is impossible judicially to put it in force, and I need specify only that the literal, grammatical and logical effect of the section is, if constitutional and at all effectual, to divest the common council and board of aldermen of Newark and Jersey City of all their powers over every subject—which effect is irreconcilable with some other provisions of the act— showing that the legislature did not know its own mind, and that the court cannot ascertain it. *State* v. *Commissioners,* 8 *Vroom* 12, 17, 23.

For the respondents, *Frederic W. Stevens* (with whom were *Edward L. Price, Theodore Runyon* and *Henry Young*).

The only question to be decided in this case is, whether the act of March 28th, 1891, is a valid act of legislation in so far as it commands the mayors in all cities of the first class to appoint a board of street and water commissioners, in substitution of the municipal authorities who before that time were charged with the care and management of the public streets and of the water supply. All other questions are irrelevant. Thus the question whether, after their appointment, these boards shall assess, as directed by section 3, only one-third of the cost of repaving any street upon the property benefited, or whether they shall assess a larger proportion, has nothing to do with the question to be decided. Whether the court

would or would not approve the scheme of assessment here indicated, the result of the present inquiry would be the same. In the *Agens Case*, 8 *Vroom* 415, the Court of Errors condemned as unconstitutional a provision of the Newark charter which related to an assessment for paving, but no one ever supposed that the city charter was, therefore, in other respects vitiated, and the charter did not contain the provision found in the present act—" § 24. That in case for any reason any section or provision of the act shall be questioned in any court, or shall be held to be unconstitutional or invalid, the same shall not affect any other section or provision of this act."

It must be admitted that the main purpose of the act is to concentrate in one board the multiform duties theretofore performed by a number of independent municipal agents. Whatever was done in addition was merely incidental and easily severable. With such incidents, therefore, we have no concern.

Two questions present themselves.

(1) Was it competent for the legislature to unite the various and independent offices and functions, which it has sought to concentrate, in the board of street and water commissioners?

(2) If it was, has the legislature effectuated its purpose by the act in question?

I. That it was competent for the legislature to do this, is now settled beyond all question. The object of the act was to effect a change in the governmental machinery of cities of the first class.

*Mortland* v. *Christian*, 23 *Vroom* 521, decides that population is a proper basis of classification on which to rest a law giving to the larger municipalities a system of administrative machinery " more compact in form with greater executive possibilities "—in other words, the very system here provided.

In *Warner* v. *Hoagland*, 22 *Vroom* 62, the legislature passed an act abolishing boards charged with the duty of opening, constructing, cleaning and improving streets, sewers,

drains and parks in cities, except cities of the first class. This court decided that it was proper to exclude cities of the first class from the operation of the act, for the reason that boards were appropriate, if not necessary, to such cities, while inappropriate to other cities. Says Mr. Justice Depue: " This act vests sole and exclusive jurisdiction over these matters in the common council or board of aldermen, and abolishes every other office, commission or board, having previously any power or jurisdiction in the premises. Provisions such as this act contains may be suited to the wants and necessities of the cities of limited magnitude to which the act applies. Applied to cities of the magnitude of the excluded class, as exemplified in Newark and Jersey City, the act would disarrange the whole system of public improvements, and be productive of much harm." This case was approved by the Court of Errors for the reasons given in the Supreme Court, and is an authoritative decision that boards for the construction and care of streets, sewers and parks may be exclusively appropriate to cities of the first class as now constituted. If appropriate as to streets, they can be no less appropriate as to the water supply.

II. It being demonstrated that the legislature may confer upon cities of the first class boards for the purposes indicated, the next question is, has it done so by the act of March 28th, 1891?

That it has attempted to do so is admitted. That it has effectually done so is no less clear.

The first section enacts that the mayors in all cities of the first class shall appoint five suitable persons, who shall form a board to be called " the board of street and water commissioners."

The second section enacts that the said board " shall be substituted for and become vested with and shall perform all the powers, rights, duties and authority as are or may be by law vested in or imposed upon or exercised by the board of aldermen, common council or other governing body or board of such city, or of any public aqueduct or water board, or of

any department, * * * street commissioner, office or officer * * * having power"—i. e., in so far as they have power—(1) to lay out, open, grade, &c., streets; (2) to pave, repair or clean streets, sewers or drains; (3) to regulate their use; (4) to remove garbage; (5) to construct, repair and maintain public water works; (6) to construct and maintain public parks and docks, and (7) to erect, repair and control certain public buildings. The same section then proceeds to declare that the office of aqueduct or water commissioner, and, under certain qualifications, their employes, "are respectively hereby abolished, and the term or terms of office of all such officials are hereby terminated."

From this it appears that the legislature, having the power to make the substitution, has, in language of clear and unmistakable import, actually done so. And unless the law-making power has, by other clauses of the act, undone its own work, the old officers were, upon the appointment and organization of the new board, abolished, and the new board were invested with full control.

The question then is, is there anything in this act which will invalidate it?

First, it is said that its title is defective. It seems to me that the title is its own vindicator. It would be difficult to find an act whose title more clearly and specifically indicates its real object.

It is entitled "An act concerning cities of the first class in this state." If it had stopped here it might have been said that it conveyed no real intimation of what it was intended to accomplish. It proceeds, however, as follows: "Constituting municipal boards of street and water commissioners, and defining the duties of such boards and relating to the municipal affairs and departments"—i. e., to such of the municipal affairs and departments—of such cities as are placed under their management, and providing for their maintenance. The title, therefore, relates to a single subject-matter, viz., boards of street and water commissioners in cities of the first class; and it declares that, if examined, it will be found that it

defines the powers and duties of such boards; that it relates to such municipal affairs only as are placed under their management, and that it makes provision for their maintenance. If this be not strict compliance with the letter and the spirit of the constitutional provision, I am at a loss to know what could be.

It is said, in the second place, that the existence of the board depends upon the action of the mayor. So does the existence of any officer whom he is directed to appoint. If the mayor or the common council refuse to appoint officers whom the statute directs them to appoint, there are, of course, no such officers. But the law which they have disobeyed is none the less a valid law, and failure to perform the statutory duty will call for the appropriate remedy of *mandamus* (*Cleveland* v. *Board of Finance,* 9 *Vroom* 262; *Benedict* v. *Howell,* 10 *Id.* 222), indictment or impeachment. *Hoboken* v. *Gear,* 3 *Dutcher* 277. But I do not see how this point can be the subject of discussion, in view of the fact that the mayor has actually obeyed the law and made the appointments.

It is objected, thirdly, that the act is rendered special by its fourteenth paragraph, which declares that all laws, general, special, local and private, in force in any city of the first class, shall apply to the board of street and water commissioners of such city. There are several cases in which this very question has been considered and decided adversely to the claim of the relators. *Evernham* v. *Hewlitt,* 16 *Vroom* 54; *Campbell* v. *Board of Pharmacy,* 16 *Id.* 241; *Jelliff* v. *Newark,* 19 *Id.* 101.

The question was also involved in *In re Cleveland,* 22 *Vroom* 312, 23 *Id.* 188. In *Pamph. L.* 1889, *p.* 196, for example, it is prescribed, as to the board of finance, " that they shall be invested with and shall perform all the powers and duties now exercised by any finance committee * * * in virtue of any law of this state in regard to the control and management of the finances of any city," &c. The Freeholders' act, passed upon in *Christian* v. *Mortland, supra* (*Pamph. L.* 1889, *p.* 165, § 5), contains a clause of the same

character—" all laws, either general, special or private, now in force  *  *  *  shall .apply," &c. In view of these decisions argument is superfluous.

It is next objected that the act is rendered special by the provisions of section 22, in which it is enacted that "·Whenever there shall now or hereafter exist in any city of the first class any limitation on the powers transferred by this act,  *  *  *  by requiring a concurrence of any separate board, other than said board of common council,  *  *  *  this act shall not be construed as dispensing with such concurrence." The argument is that by the operation of this clause in Jersey City the new board will, in certain particulars, be subject to the control of the board of finance, while in Newark there will be no like control; consequently, it is.said that the act is special, in that it will operate diversely in each municipality. But the fallacy in this argument lies in the assumption·that the act itself has created this diversity. This it manifestly has not. So far as it goes it has created uniformity. It has made the machinery of administration uniform, but it stops there and permits this machinery to be ·controlled by existing law. It might have gone further. It might have given cities not only like machinery, but also like laws to regulate that machinery. But the constitution compels no such a ·course. The constitution does not of itself operate to repeal existing charters. It allows them to continue in force until the legislature shall by general legislation change them.

It is within the power of the legislature to revolutionize all city governments by one sweeping enactment that will forever do away with diversity in all its forms, but it may, also, and more cautiously, introduce uniformity, step by step, and if it do so, the constitution is satisfied. It may be true that the board of street and water commissioners will, under existing laws, be more restrained in Jersey City than in Newark, but if it be, this will arise solely out of the fact that the officers for which this board was substituted were more restrained. This is not the result of the law under review, but of the old

law, which remains unchanged. In the language of the Court of Errors in the *Cleveland Case,* 23 *Vroom* 196, "it is a peculiarity existing by reason of previous laws." What the twenty-second section says, then, is this: "Whatever control your predecessor was subject to by reason of the law of your city, you, the new board, shall be subject to." It is quite manifest, then, that the objection to this section is precisely the same objection that was made to the fourteenth section, and that the same conclusive authorities apply to it.

The next contention is that section 12 of the act gives to the board legislative authority, and that this authority cannot be delegated to it.

In the first place, the contention is not true in fact. The authority given is in no proper sense of the term legislative, but administrative—incidental to the power given to manage the streets. This authority thus given by section 12 is to regulate the running of cars, locomotives, vehicles and foot passengers, to regulate the crossing of the streets at grade or otherwise, and to regulate the use and occupation of the streets by awnings, posts, signs, private lamps and other encroachments. The only other power, viz., that of granting franchises and locations to street railway companies, subject to the limitations contained in the general laws of the state relative thereto, is this, that the board may, when applied to under sections 8 and 11 of the Horse Railway act (*Rev. Sup., p.* 364), refuse or grant a location in the manner therein specified. The word "franchise," construed by the context of this act, means only "the privilege of locating on the public highway pursuant to its requirements." It would be a strained reading which would give it a wider signification.

The line between rules which an executive officer may make in reference to the subject-matter entrusted to his care and the laws which a law-giver can alone make in reference to the same subject-matter, it must necessarily be somewhat difficult to draw with nicety. A court makes rules for the use of the court-room by the bar, the jurymen and the spectators. Does it, by so doing, usurp to itself legislative power?

The aqueduct board makes rules with reference to the use of water by the fire department and by the citizens. Does it thereby violate the constitutional rights of the common council to legislate locally? The board of health makes rules with reference to the deposit of garbage and the draining of unhealthy localities. Is the legislature powerless to confer authority to do so? If not, why is it not competent to give to the street department like power, viz., the power to regulate, within reasonable limits, the use of the streets entrusted to its care? And if the regulation be not *per se* legislation in the proper sense of that term, it certainly cannot be made so by the use of the word "ordinance." This was no more than a convenient reference by the legislature to the mode in which it willed that the rules to be made by the board should be adopted.

· But the legislature has always considered the class of duties entrusted to this board as administrative rather than legislative. Certainly the surveyors and overseers of the highways are administrative officers. From time immemorial the surveyors have been entrusted with the laying out of highways, and the overseers with the removal of encroachments therefrom. *Rev. Stat., tit. "Roads,"* § 49. Their duties being essentially administrative, would they become legislative if these officers saw fit to make rules regulative of the subject entrusted to them, or would the legislature be infringing upon the constitutional rights of the township committees if it expressly provided that the overseers might make them?

But, outside of the distinction between regulation and legislation, I know of no constitutional provision which restrains the legislature from giving to the board such powers in reference to streets as it may see proper.

In *Cleveland* v. *Board of Finance*, 9 *Vroom* 264, Mr. Justice Scudder says: "It is important to notice the difference in the legislative control over municipal corporations and individuals."

In case of the latter, the law is defined and the constitutional limitations are well understood. But with the former,

Judge Dillon says: " It is impossible to state with confidence what limitations exist upon the power of the legislature over municipal corporations as ordinarily constituted. The legislatures make, control, alter or abolish municipal charters at their will, and the only conceded limitations of their power to be found in the cases are such as clearly belong to and directly affect the individual citizens under the national and state constitutions."

Could not the legislature abolish city governments altogether and re-establish the township system ? If it did, could it not create an independent board with powers like those conferred upon the present board ? Could the township committees object on constitutional grounds ? What title could they show to be themselves possessed of these powers ?

But the constitution itself recognizes the right to establish government by commissions if this should be deemed such. The prohibition is not against government by commission, but against special and local laws constituting such commission. If government by commission was to be wholly unconstitutional, the legislature would have leveled its prohibition against the system as a whole and not against commissions appointed by local laws. Government by commissions in Jersey City, Long Branch, and perhaps in other places, was no novelty.

But, furthermore, if it was unconstitutional to withdraw the management of the street department from the control of the common council, why was it not equally unconstitutional to withdraw the management of the police, the fire and the excise departments ? The proposition must be that the common council have by force of some implied constitutional restraint certain inalienable powers of municipal government which the legislature cannot take from them. I cannot imagine any powers which are more likely to be inalienable than such as concern the police and fire departments, and yet since 1885 there have existed in Newark boards of fire and police commissioners with power to make by-laws, rules and regulations (*Rev. Sup., p.* 518, § 7) which theretofore were made

only by the common council. Are these bodies unconstitutional? No one hitherto has ever supposed they were.

The last ground of objection is that the law is so uncertain as to be incapable of execution. This objection is rarely made and still more rarely sustained. It is quite inapplicable to the present act, whose purposes are as definite as it is possible for language to make them. There is no uncertainty in respect to the composition of the board or the mode of its appointment, or the subjects committed to its control. Construing the word "having," on page 7, line 9 of section 2, in the sense of "in as far as they have," which every line of the act shows to have been the intent, the subjects committed to its control are seen to be stated with the utmost particularity and precision.

The act presents one harmonious whole, whose meaning it is impossible to misapprehend. Even those sections relating to assessments, to which objection is made on other grounds, are free at least from the vice of obscurity. It may be that the object of the act might have been more shortly expressed, but its very repetitions are evidence of the care which was used to avoid misapprehension as to the limit of the jurisdiction conferred.

I confidently submit that this ground of objection is quite without substance.

The opinion of the court was delivered by

BEASLEY, CHIEF JUSTICE. The present proceeding stands before the court in this wise: Mr. Haynes, as the mayor of Newark, presented to the Chief Justice of this court a petition, stating, *inter alia,* that in pursuance of the act of the 28th of March, 1891, he had appointed in Newark a board of street and water commissioners, and that a controversy touching the title of the officers so appointed existed, and he therefore prayed that a special term of this court should be held for the purpose of hearing and deciding, in a summary way, that litigation in conformity with the twenty-fifth and twenty-sixth sections of the statute just mentioned. In compliance

with this application an order was made for the parties to interplead, and thereupon certain persons, who were the old incumbents of the offices relating to the streets and the water supply, exhibited their informations, averring that the new appointees of the mayor had intruded into and had usurped said offices, and that the act whereby such wrong was attempted to be justified was unconstitutional and void. These allegations having been traversed, it is upon such pleadings and certain admitted facts that the matter has been heard.

The controversy thus presented gives rise to but a single question, and that is whether the act thus put in issue is constitutional or not.

Inasmuch as none of the exceptions taken to this statute has, in my opinion, any solidity whatever, my exposition of the views of the court upon the subject will be as brief as is consistent with perspicuity.

The first point of counsel's criticism related to the title of the act thus challenged. That title was as follows, viz.·- "An act concerning cities of the first class in this state, and constituting municipal boards of street and water commissioners, and defining the powers and duties of such municipal boards, and relating to the municipal affairs and departments of such cities placed under the control and management of such boards, and providing for the maintenance of the same."

It was insisted that this title is insufficient, as it does not fulfil the constitutional requirement "that every law shall embrace one object and that shall be expressed in the title."

That this proposition is not sustainable it seems to me will be at once apparent to every unprepossessed mind. The entire object of the act is the constitution of municipal boards of street and water commissioners in cities of the first class, and this title, in express terms, says that such is the legislative purpose. The superadditions following this plain declaration of the statutory object, as that it is an act "defining the powers and duties" of such boards, and relating to affairs and departments placed under their control, the worst that

can be said of these is that they are unnecessary. They may be, and probably are, *redundencies*, for if boards of ·the kind specified are to be erected, necessarily the power of such boards must be defined, and the law must relate to the affairs entrusted to their management. But by the presence of such superfluities the plain expression of the object of the act is not in anywise perplexed, as such superfluities harmonize in all things with such expression.

Consequently, in my opinion, this exception is without foundation either in law or reason. It has always been held that these statutory titles, with regard to their construction, are to be liberally treated, so as to validate the law to which they appertain, if such course be reasonably practicable. In such a connection hypercriticism is utterly out of place, the only requirement. being that the title of the statute shall express its object in a general way so as to be intelligible to the ordinary reader. This is the rule when there is obscurity, but this rule need not be invoked on this occasion, for this statutory superscription is, on the point in question, both explicit and unambiguous.

A second objection of the same strain was that this act is out of harmony with the fourth paragraph of section 7 of the fourth article of the constitution. The clause thus referred to is in these words: "No act shall be passed that shall provide that any existing laws, or any part thereof, shall be made or deemed a part of the act, or which shall enact that any existing law, or any part thereof, shall be applicable, except by. inserting it in any such act."

This clause was interpreted by counsel in its strictly literal meaning, and judicial views expressed by courts of other states were referred to justifying, as it was thought, such a course. Such decisions, it may be said in passing, could not have with us the accustomed force of judicial determination, as they are mere translations of constitutional language which is not identical with the terms of the constitutional clause now in question. It may be further said, also, in passing, that to read this clause in the sense ascribed to· it by counsel

would render its judicial application replete with difficulties, and that to give it such force would invalidate many of our legislative enactments. In my opinion, a very large body of the supplementary statutes now existent would, by the adoption of such a rule of exposition, be illegalized. That this unreasonable operation is not to be permitted to this constitutional prohibition, in view of its obvious purpose, was recently adjudged by the Supreme Court in the case of *Campbell* v. *The Board of Pharmacy*, 16 *Vroom* 241.

But it is not necessary to pursue this subject further, for the reason that it does not belong to the present inquiry.

In the argument before the court in behalf of the relators, the constitutional clause just recited was thus applied.

The act of 1891, now *sub judice*, directs the respective mayors of cities of the first class to appoint five residents to be known as street and water commissioners, and it provides, among other things, that such commissioners shall have all the powers and capacities theretofore vested by existing legislation in boards or officers having charge and control over the streets or the water supply of such respective cities. At the passage of this act the streets of Newark were cared for by a street commissioner and the water supply by an aqueduct board, each of these officers being vested with extensive powers. Consequently, it appears that the act is plain to this extent: it clothes these appointees of the mayor with all the statutory authority that had been previously possessed by the officials whom they had superseded.

The position taken against this scheme by counsel was "that the powers and duties of these new municipal boards are not defined except by reference to existing laws," and for that purpose making such existing laws applicable, and which it was contended was inhibited by the constitutional provision above quoted.

But, most assuredly, it is a conclusive answer to this argument to refer to the fact that this subject is *res adjudicata* in this state. This legislation in the respect now in question is identical with that which was sanctioned by the Court of

Errors in *In re Cleveland, Mayor, &c.*, reported in 23 *Vroom*, for the statute tested on that occasion, in express terms, provided that " every power, &c., now existing in any office, &c., shall be performed by the board of street and water commissioners in this act provided for." It seems obvious that this decision, entirely authoritative, is applicable in every respect in the present instance.

And, indeed, considering the matter independently of authority and looking at it solely in the light of legal principles, it would appear to be plain that this clause of the constitution can have no effect in any case of the class to which the one in hand belongs. It can never be applicable where there is a mere substitution of one officer in the place of another. Official authority resides in the office and not in the incumbent, the consequence being that a change in the mode of appointment to such office does not affect its powers, and the new appointee will become possessed of the right to exercise all such powers by the sheer force of his incumbency and without any legislative declaration to that effect. When an act provided that the justices of this court should, *ex-officio*, become members of the Orphans' Court, Common Pleas and Quarter Sessions, it was not deemed necessary to define the powers they thereby acquired. It was never doubted that each Supreme Court justice became at once invested with all the prerogatives exercisible by any member of the respective courts just designated. If a statute were to be enacted requiring each mayor in each city of the state to be chosen by its common council, no one, it is presumed, would deny that every of such officers would, by mere intendment of law, be entitled to exercise all the authorities theretofore resident in such offices. In the instance before us the incumbents of the offices appertaining to the streets and the water supply were, by legislative decree, discharged and the mayor's appointees took their place, and by force of that substitution such appointees became entitled to perform every function and to exercise every power that had been legally performed or exercised by their predecessors. In such a transaction the offices

themselves undergo no change; what is changed is the method of the appointment of their incumbents.

From this view it necessarily follows that this legislative grant to these new officials of the power which had been possessed by their predecessors, is altogether useless and nugatory; that the same state of affairs would exist without it as with it, and from this conclusion it also necessarily follows that the presence of such a legislative grant in the statute under consideration cannot invalidate the statute. The statutory provision under criticism effects nothing, the result being that it cannot be said to do what this constitutional clause prohibits—that is, to enact that any existing "law shall be applicable" to the act in which it is found.

It has not seemed to the court that there is even a semblance of substance in this objection.

With respect to certain other powers vested in these commissioners, this court at the present time has no concern. Such grants of power have been elaborately criticised in the arguments of counsel, but such criticism, it is deemed, has no pertinence on this occasion. For if it were granted that all these complimentary powers—such as the prerogative to enact city ordinances within a certain sphere—were absolutely nugatory and void, such concession could not, even in the most distant degree, have any effect on the judicial examination now in hand. On this information the only question to be considered and to be decided is, whether these respondents have the right to officially supersede these relators, and to this extent, as we have seen, such right is thought to be unquestionable, and upon reaching that result the present inquiry is concluded. These grants of power here referred to are easily separable from those authorities that inhere in these respondents, by force of their substitution, in the place of superseded officers, and consequently they can be eliminated without impairing or in anywise diminishing this statute in its present application. Such excision would take place by the operation of general legal rules, and there is express provision for such

a course of treatment in one of the sections of the enactment in question.

There is still another objection which it may be proper to notice particularly, as it occupied a prominent place in the arguments of counsel. It is this, that the statute under consideration was of a purely local character and is on that account unconstitutional.

The reasoning on this subject ran in this line, viz., that while cities could be classified on the footing of population, nevertheless such fact did not authorize legislation appertaining to streets and water supply, as such necessities are common to all the municipalities of the state, be they great or small.

The fallacy of this argument proceeds from a misconception of the subject of the statute to which it relates. It is true that streets and water supplies are matters common to all cities, no matter what their grade, but this legislation does not attempt to deal with these things in this wide point of view. What it deals with is exclusively the machinery by which such interests are to be regulated. If, therefore, municipal population, when it is large, does not reasonably require a different kind of machinery from that which is suitable to a small population, then it would be plain that the position of the counsel of the relators just referred to would be impregnable. But such, we think, is not the fact. It is true that the classification of our cities is made on the basis of population, but this term in this connection connotes not only the number of the inhabitants but also municipal magnitude in all respects; and a city largely populous must necessarily have a great stretch of streets and a water supply of immense volume. It is the largeness of such necessities, incident to a great population, that differentiates cities of the first class from cities of the other classes, and the consequence is that all legislation regulative of such necessities, on account of their magnitude, is obviously constitutional, as it is germane to the basis of municipal classification. In a small city the supervision and control of the streets and of the water supply may well be, as it usually has been, left in the hands of those en-

trusted to administer generally its affairs, but all experience-
has shown that such matters in large cities can be properly
managed only by independent boards duly organized for the
purpose, and this is little more than saying that the swaddling-
bands of the infant are not the fit habiliments of the man.
We have found no force in the proposition that, with respect
to the machinery requisite to the management of their streets
and water, the small and large cities of the state must be simi-
larly organized.

Our conclusion is that these commissioners appointed by
the mayor, under the act of 1891, are legally in office.

Let judgment be entered accordingly.