# CASES DETERMINED

IN THE

# SUPREME COURT OF JUDICATURE

OF THE

## STATE OF NEW JERSEY.

NOVEMBER TERM, 1892.

---

THE STATE, EX REL. JOHN C. OWENS, RELATOR, v. CHARLES J. FURY.

The statute approved March 23d, 1892, which constitutes a municipal board of public works and other officers in a certain class of cities of the state—*Held* to be constitutional.

---

On *quo warranto*. On demurrer to plea.

Argued at June Term, 1892, before BEASLEY, CHIEF JUSTICE, and Justices DEPUE, SCUDDER and REED.

For the relator, *John Rellstab, George M. Robeson, William M. Lanning* and *John R. Emery.*

For the respondent, *Chauncy H. Beasley* and *Allan L. McDermott.*

The opinion of the court was delivered by

BEASLEY, CHIEF JUSTICE.    This is an information in the nature of a *quo warranto*, the question being whether the respondent is an intruder into the clerkship of the city of Trenton.

The record admits that he was duly appointed to such office by the mayor of that city, in accordance with the eighth section of the act of the last legislative session, entitled "An act concerning the government of certain cities in this state, and constituting a municipal board of public works and other officers therein, and defining the powers and duties of such boards and relating to the municipal affairs and departments of such cities placed under the control and management of such board, and providing for the maintenance of said board," approved March 23d, 1892.

The object of the present proceeding is to test the validity of this statute, the contention being that it is a special and local act, and as such is unconstitutional.

The general purpose of the law thus assailed is to deprive the common councils of all cities having a population of not less than fifty thousand and not more than one hundred thousand, of the greater part of their appointive power and to transfer it to the mayors of such places respectively.    To this end it, in the first place, empowers the mayor of each of such cities to appoint five persons, who are constituted a board of public works, having exclusive control over the sewers, water works and streets; and it then proceeds to direct that by the same authority shall be appointed a city clerk, city comptroller, city counsel, receiver of taxes and inspector of buildings in lieu of all other officers in such departments theretofore existing.

The cities affected by this legislation have been classified on the basis of population, and it is contended that such basis has no causal relation to the system established by the statute.

But this, we think, is a plain fallacy.    Almost all offices affecting the interests of a great number of persons are of a highly important character, while those that touch the affairs

only of a few persons are usually insignificant. It seems undeniable that the clerkship of a large city is of much greater public concern than the clerkship of a small one. If, then, the importance of the office is to be measured by the largeness of the population in which it operates, it would seem to follow, as a direct consequence, that the method of filling such office has the same affiliation with population. It is not apprehended that any one will deny that offices of this kind increase in rank in proportion to the growth in number of those persons whose interests they promote, and that in the same ratio the question how such offices are to be supplied with incumbents rises in importance. It may well be that no evils will be perceived when such officers as a city clerk or that of tax collector are chosen in a small city by a common council composed of few persons, while the opposite may result when such election is made in a large city by a council having, it is most probable, many members. Experience both in state and in municipal affairs has shown that a numerous body cannot be converted into an eligible appointive power, as is illustrated in the frame of our state constitution, which transferred the prerogative of official appointment from the joint meeting to the governor. Where such power shall reside in our municipal constitutions is, therefore, a subject for legislative determination, depending on the magnitude of the given office, and which magnitude, as we have seen, is to be tested by population. A classification by population, in this respect, is, consequently, entirely proper.

In leaving the subject it may be well to remark, that the argument for the relator in this case, if it should have prevailed, would have established the doctrine that the appointive power in every city of the state, from the smallest to the highest, must be identical, a doctrine in diametrical opposition to the decision of this court in the case of *Haynes, Mayor of Newark*, reported in 25 *Vroom* 6.

The decisions cited by the counsel of the relator in support of their views, such as those of *Hightstown* v. *Glenn*, 18 *Vroom* 105, and *Helfer* v. *Simon*, 24 *Id.* 550, are not authorities ap-

plicable on the present occasion. They rest upon the ground that the statutes to which they respectively relate were illusory, a quality that cannot be ascribed to the act which we have been considering. In the act before us the method for the appointment of a city clerk is a·consistent part of a general system, and, as it harmonizes with such system, it presents not the faintest indication of an attempt to evade the prohibitions of the fundamental law; whereas, as in the case of Helfer *v.* Simon, just cited, a single officer, of minor importance, was directed to be appointed in cities of the second class in a way that was altogether unique, so that it was out of unison with all the other parts of the scheme of government into which it was intruded, the consequence being that it was properly thought to be elusive as a provision contrived for some private purpose. There is a plain line of distinction between such a case and the present one.

The respondent is entitled to judgment.