THE STATE, EX REL. JOHN MATHESON, RELATOR, v.
JOHN CAMINADE.

1. The act approved March 8th, 1892, which establishes a Police Court in certain cities of this state is constitutional.
2. Population is a proper basis, in this respect, for a classification of cities, as a difference of population calls for a difference of police regulation.
3. It is for the legislature to delineate such classes, and if such act be not plainly elusive of constitutional restrictions, it cannot be judicially interfered with.

---

On *quo warranto.*   On demurrer to plea.

Argued at June Term, 1892, before BEASLEY, CHIEF JUSTICE, and Justices DEPUE, SCUDDER and REED.

For the relator, *William M. Lanning.*

For the respondent, *Garret D. W. Vroom.*

The opinion of the court was delivered by

BEASLEY, CHIEF JUSTICE.   This is a proceeding on *quo warranto*.   The facts are not in dispute, as the argument arises on a demurrer.   There is but a single question to be resolved, and that is, whether a certain legislative act be con-- stitutional or not.

The statute thus alluded to was approved March 8th, 1892 (*Pamph L., p.* 66), and is entitled "An act concerning certain cities of the second class in this state, and constituting a Police Court in such cities, and providing for the appoint- ment of police justices of such courts, and defining the juris- diction, powers and duties of such police justice and abolish- ing all other police courts, recorder courts and police justices in such cities."

The purpose of this legislation is to establish in every city of the second class of the state having a population of fifty thousand or over, one court to be designated a Police Court. The act minutely defines the jurisdiction of the tribunal thus erected and provides that a single judge shall preside therein, to be designated the police justice, who is to be appointed by "the governor by and with the advice and consent of the senate," the term of his office being five years.

It is not necessary for present purposes further to par- ticularize the provisions of this law, as such details can in no wise elucidate our inquiry.

The debate at the bar was addressed to the exposition of a single question, viz., whether this statute is or is not a special and local law, regulating the internal affairs of certain cities, within the interdiction of the constitution.

It was necessarily conceded that this statute did regulate the internal affairs of only certain cities of the state; that is, cities whose population was at least fifty thousand and did not exceed one hundred thousand.   Consequently, the only inquiry is whether the statute in question be a special or a general act within the constitutional meaning of those terms?

In view of the decisions heretofore made in this court, and, in part, in the Court of Errors, it has not seemed to me that

there is any room for doubt on this subject. Indeed, the contention in this case wears rather the aspect of an application to this court to revise and to reverse quite a number of its own decisions, than of the presentation of a new subject for consideration. That such an inference has, at least, some plausibility, is apparent when we refer to the principles on this subject, that in this inquiry must be taken to have been entirely settled so far, at all events, as this court is concerned. Thus, it has been decided that, with regard to structural forms of government and administration, the municipalities of the state may be distributed, for legislative action, into classes constructed on the basis of population. The ground, plainly expressed, for this conclusion was that "population" in this connection is a connotative term, signifying not only the populousness of a city, but, as well, the magnitude of its public concerns, and hence a fair classification on such basis was a distribution of cities which, in all essentials, were of different grades, manifestly requiring different forms of government, and hence the choice of adaptive forms of government was of necessity a legislative function.

Therefore, the proposition that the classifications thus stated can be made for the purpose indicated must be taken as a *datum* in all reasoning upon the subject, and it consequently becomes plain that a statute founded on such a classification is a general, not a special or local, law, and that the legislative power thus exerted is limited only when it relates to something manifestly foreign to the distinctive grade of the cities to which it is applied. This principle leaves it to the legislature to create or to modify, in general, the institutions in each class of our cities as it may deem expedient, and such institutions may differ in all respects, or in some respects, from those existing in cities of other grades, provided the differentiation thus introduced is not demonstrably evasive of the constitutional prohibition under discussion. That there may be this variation with respect to structural apparatus, in all its variety, between these graduated municipalities, appears to be incontestable in the light of the decision of this court in

the case of the mayor of Newark, *In re Haynes,* 25 *Vroom* 6. In that instance the act which was held to be constitutional constructed in cities of the first class a system of government for the most part unique in its character with respect to such important matters as the water supply in the streets, and it was urged on the argument in that case that such matters as the water supply and the streets were interests common to all cities, and that, therefore, they must all be subject to the same method of regulation. But the argument did not prevail, the judicial view being that, inasmuch as such interests varied in magnitude in the cities of different grades, variations of regulation in such cities were legitimate.

And this decision seems to us to dispose of the case in hand. It is the difference in population that forms the distinctive characteristic upon which such classifications are made.

The object of the statute before us is to constitute a Police Court in all cities of the state containing a population of not less than fifty thousand and not exceeding one hundred thousand. The judge to preside over such tribunal is to be appointed by the governor, by and with the advice of the senate; his jurisdiction, salary and term of office being prescribed.

In the contestation touching this matter, the substance of the argument on the part of the relator is embraced in the following questions taken from the brief of counsel. It is asked, referring to the appointment of the police justice by the governor, " Can the ingenuity of man devise a reason for vesting in the governor such power in Trenton, Camden and Paterson, and not in any other city of the state?" Again, " Do cities between fifty thousand and one hundred thousand have qualities and attributes, because of such population alone, so different from other cities that the provisions of this act are adapted to them and not to any others?"

It will be observed, upon the slightest thought, that these questions have been virtually answered in the case of In re Haynes, just referred to. It is now asked, Why in cities of the class in question the appointive power should be lodged in the governor? In the reported case it was asked, with

similar emphasis, Why, in cities of the first class, it should be lodged in the mayor? Plainly in such an affair the choice of the depositary of such a function must be found in legislative discretion. In cities of the present class the office of the police justice is one of importance; it is congruous with the situation for him to be nominated to office by the chief executive. The provision contested, therefore, is germane to the ground of classification, and on that account is in all respects subject to legislative action.

The second question just stated challenges the classification on which this statute rests; for it impliedly asserts that cities of this class are not possessed of any quality that justify the giving to them alone a court of this character.

This criticism has no force whatever, unless it is to be assumed that in the respect in question every city in the state stands upon the same footing with all other cities; that is, that the needs of the smallest city regarding magistry are identical with those of the larger ones. Such an assumption would, of course, be absurd, and yet if it be admitted that places of great population require and are entitled to a more elaborate system of police than do places containing a sparse population, the fallacy of the position in question is demonstrated, for the legality of a legislative classification of such municipalities has become manifest. But it would be superfluous to discuss the case further, inasmuch, as has been already said, the subject is dominated by the decision in In re Haynes, already cited. If cities can be graded on the basis of population for the purpose of giving a class a particular system of street management, *a fortiori* is such course admissible with regard to their police?

The act in question is, in our opinion, plainly constitutional.