THE STATE, EX REL. JAMES W. McCARTHY, RELATOR, v.
JOHN WAHL QUEEN.

THE STATE, EX REL. EDWARD FRY, RELATOR, v. ROBERT
DAVIS.

Argued January 11, 1908—Decided February 24, 1908.

1. The act approved October 28th, 1907 (*Pamph. L., p.* 705), enti-
   tled "An act concerning the government of cities of the first
   class," is not in violation of article 4, section 7, paragraph 11 of
   the constitution of the State of New Jersey prohibiting special
   laws regulating the internal affairs of towns and counties.
2. The act applies to the office of police justice.

On *quo warranto* on demurrer to information.

Before Justices SWAYZE and TRENCHARD.

For the relators, *Merritt Lane.*

For the defendants, *Warren Dixon, William D. Edwards,*
and *Charles L. Corbin.*

The opinion of the court was delivered by

TRENCHARD, J.    These cases come before the court upon
informations in the nature of *quo warranto,* one instituted by
a police justice of Jersey City, appointed under an act passed
May 18th, 1894 (*Pamph. L., p.* 451), for a term not to expire
until January 1st, 1910, and the other by the city collector of
Jersey City, appointed under an act approved March 19th,
1891 (*Pamph. L., p.* 198), for a term not to expire until
January 1st, 1909.

The defendants were appointed to succeed the relators by
virtue of an act entitled "An act concerning the government
of cities of the first class," approved October 28th, 1907
(*Pamph. L., p.* 705), which provided as follows:

"In cities of the first class the term of office of all city officers, members of city boards and other employes appointed by the mayor thereof, whether for a definite or an indefinite term, shall expire with the term of such mayor, and the successors of such officers, members of city boards and employes shall be appointed by the incoming mayor, and shall hold such positions during the term of the mayor so appointing, but the provisions hereof shall not apply to the offices of city treasurer and city comptroller in said cities."

The informations have been demurred to and joinders have been filed. The judgments asked are ouster against the defendants and determinations that the relators are entitled to hold the offices in dispute.

Two questions are presented—*first,* whether the act of 1907 is constitutional; *second,* whether the act applies to police justices.

It is contended that the act is unconstitutional on the ground that it violates article 4, section 7, paragraph 11 of the constitution of the State of New Jersey, prohibiting special laws regulating the internal affairs of towns and counties.

That the act deals with the internal affairs of towns within the meaning of the constitution has been settled beyond the necessity of citation of authority.

It is insisted that the limitation of the act to first-class cities renders it special legislation.

We cannot yield to that insistence.

The office of police justice in Jersey City was created by the charter of 1871. *Pamph. L., p.* 1140, §§ 109, 112. By this act the police justices were appointed by the senate and general assembly, and were given the powers of a justice of the peace in criminal matters, and additional powers for the enforcement of ordinances.

By the act approved March 16th, 1891 (*Pamph. L., p.* 152), in first-class cities, three police courts were created, with three police justices, to be appointed by the governor, for a term of five years. Section 4 provided that they should take the place of other police justices, and that the terms of such justices should expire twenty days after the act took

effect. The jurisdiction was defined in the same manner as in the charter. Section 17 provided that the police justices appointed at the joint meeting of the legislature of 1891 should hold their offices for five years, and should be taken to be the police justices under the act.

In 1894 the act of 1891 was repealed (*Pamph. L.* 1894, *p.* 450), and on the same day another act was passed (*Pamph. L.* 1894, *p.* 451; *Gen. Stat., p.* 2494) for the appointment of police justices in cities of the first class. ·This act is still in force. Section 1 provides that the mayor shall appoint for a term of three years. Section 2 contains the same provisions as the charter as to powers. Sections 3 and 4 provide that warrants may be issued to policemen, as well as constables; that recognizances taken shall be to the city, and that police commissioners shall designate the places for holding the court. Section 7 provides that the fines shall be accounted for to the city.

The office of city collector in Jersey City was created by the charter. *Pamph. L.* 1871, *p.* 1108, § 26. By that act it is provided that the board of aldermen shall appoint the city collector. By the act approved April 6th, 1889, adopted by the people of Jersey City (*Pamph. L., p.* 187; *Gen. Stat., p.* 729), it is provided that the mayor shall appoint the city collector, and the term of such officer then holding office should end upon the appointment of his successor. The term is two years.

This act was sustained *In re Cleveland,* 23 *Vroom* 188.

In 1891 (*Pamph. L., p.* 198), in first-class cities, the term of the collector was made five years.

It will be observed that the offices of police justice and city collector were both created and the term of office regulated by statutes relating to first-class cities only, and it is difficult to perceive why these acts may not lawfully be amended or modified by like legislation. The validity of such legislation was sustained by the Supreme Court in the series of cases reported in 26 *Vroom* 1, 11, opinions by Chief Justice Beasley. These opinions cover every ground of objection to the act now under discussion. They related to the series of acts,

each of which in express terms related to cities of the second class exceeding fifty thousand population; that is to say, cities having a population between fifty thousand and one hundred thousand. We will consider them in order.

The first is an act of 1892 (*Pamph. L., p.* 215), concerning the government of certain cities in this state, and constituting a board of public works and other officers therein, &c. This act provided that the mayor should, within one month, appoint five members of the board of public works, who should supersede the street commissioner and the board of aldermen and other officers concerned with public works. Section 8 does not relate at all to the board of public works. It provides that the mayor shall appoint, within one month, a city clerk, a city comptroller, a city treasurer, city counsel, and a receiver of taxes, to take the place of the present officers, and to hold for three years, and receive the same pay as the present officers, whose terms should end upon the appointment of these officers. The clerk of the city of Trenton disputed the validity of the appointment of his successor, but the act was sustained. *Owens* v. *Fury,* 26 *Vroom* 1. The court said that the clerkship of a large city is of much greater public concern than the clerkship of a small one; that where the power of appointment shall reside is a subject for legislative determination, and that a classification by population is proper.

The act passed March 8th, 1892 (*Pamph. L., p.* 66), constitutes police courts, and provides for the appointment of police justices in such cities. Section 3 provides that the police justices shall be appointed by the governor for five years. Section 4, that the police justices so appointed shall take the place of the present police justices, whose offices shall end twenty days after the act takes effect.

In *Matheson* v. *Caminade,* 26 *Vroom* 4, this act was sustained. The court said:

"The choice of a depositary of the function of appointment must be found in legislative discretion."

The contest there was made by a police justice, and the court further said:

"If cities can be graded on the basis of population for the purpose of giving a class a particular system of street management, *a fortiori* is such a course admissible with regard to their police."

The same result was reached as to this act in the branch court. *Calvo* v. *Westcott,* 26 *Vroom* 78.

In the same year (*Pamph. L.* 1892, *p.* 112) a police department was created in cities of the second class with a population of over fifty thousand. Section 7 provides that the new board created should appoint a superintendent in place of the present incumbent. This act was sustained. *Baker* v. *Delaney,* 26 *Vroom* 9.

Another act passed in the same year (*Pamph. L.* 1892, *p.* 82) provides that in such cities a commission of public instruction should be appointed to take the place of existing school commissioners. The act was sustained. *Oler* v. *Ridgway,* 26 *Vroom* 10.

In the same year (*Pamph. L.* 1892, *p.* 215), in like cities, the act created a board of public works, and in addition thereto, by section 8, the mayor was authorized to name the city clerk who should supersede the present incumbent, and also a superintendent of streets. On a test by the latter officer the act was sustained. *McLean* v. *Gibson,* 26 *Vroom* 11.

All these decisions were approved by the Court of Errors and Appeals in *Wanser* v. *Hoos,* 31 *Vroom* 482.

In *Varney* v. *Kramer,* 33 *Vroom* 483, the city clerk was put out of office before the expiration of his term, on the claim that the act of 1894, under which he held title (*Gen. Stat., p.* 581), was invalid. It relates to cities with a population of not less than fifty-five thousand nor more than one hundred thousand. In such cities, three in number, it was provided that the council should elect the city clerk. This act was sustained on the authority of Owens *v.* Fury, and the court points out that Owens *v.* Fury was not overruled by Wanser *v.* Hoos, but was expressly approved, and that the statute under consideration in Wanser *v.* Hoos was held to be illusory, and not to relate to the structure, machinery or powers of municipal government, while such statutes as were

involved in Owens *v.* Fury and in the case of Varney. *v.* Kramer did clearly deal only with the local machinery.

Owens *v.* Fury and the other cases decided at the same time are again approved in the Court of Errors and Appeals in *McArdle* v. *Jersey City,* 37 *Vroom* 590, 595.

The propositions thus established embody this rule applicable to the present case—that a law will be general although it embraces only a class of cities formed on the basis of their population according to the discretion of the legislature, provided the law deals merely with the structure, machinery or powers of municipal government, and provided the class does not appear to have been formed illusively.

As already indicated, the statute now in hand does not come within either of these two provisos.

It is clear that it relates to the structure, machinery or powers of government of the cities affected thereby.

The tendency of modern legislation in the government of populous cities is to place the powers of appointment in a single centre, and the reasons therefor are numerous, and may well be regarded as valid. The mayor of the city is chosen directly by the people, and is held largely responsible for the policy of the government, and in the largest cities his powers of appointment of the officials who constitute the governing power of the city have been greatly increased beyond the powers of the executives of other less populous municipalities. The machinery of government of cities necessarily has relation to the individuals who carry on that government, as the individual views of the governing officials necessarily direct the policy of the government of the city, and the laws which provide for the appointment and termination of office of such individuals are necessarily a part of the machinery of such government. Presumably the intendment of the statute in question is that in large, populous cities—*i. e.,* cities of the first class—the governing officials shall be in accord with the chief executive, who is directly elected by the people, in order that the whole scheme of the policy of the city government may be stamped with the approval or disapproval of the governed upon the election of their chief magistrate.

There was thus presented to legislative discretion a substantial and pertinent distinction between cities of the first class and less populous ones.

That the method of appointing the official and his term of office are a part of the structure and machinery of government seems to have been decided in this state. In the case of *Owens* v. *Fury, supra,* Chief Justice Beasley said:

"The general purpose of the law thus assailed is to deprive the common councils of all cities having a population of not less than fifty thousand and not more than one hundred thousand of the greater part of their appointive power and to transfer it to the mayors of such places respectively. To this end it, in the first place, empowers the mayor of each of such cities to appoint five persons, who are constituted a board of public works, having exclusive control over the sewers, water works and streets, and it then proceeds to direct that by the same authority shall be appointed a city clerk, city comptroller, city counsel, receiver of taxes and inspector of buildings in lieu of all other officers in such departments theretofore existing. The cities affected by this legislation have been classified on the basis of population, and it is contended that such basis has no casual relation to the system established by the statute. But this, we think, is a plain fallacy. Almost all offices affecting the interests of a great number of persons are of a highly important character, while those that touch the affairs only of a few persons are usually insignificant. It seems undeniable that the clerkship of a large city is of much greater public concern than the clerkship of a small one. If, then, the importance of the office is to be measured by the largeness of the population in which it operates, it would seem to follow, as a direct consequence, that the method of filling such office has the same affiliation with population. It is not apprehended that anyone will deny that offices of this kind increase in rank in proportion to the growth in number of those persons whose interests they promote, and that in the same ratio the question how such offices are to be supplied with incumbents rises in importance. It may well be that no evils will be perceived when such officers as a city clerk or

that of tax collector are chosen in a small city by a common council composed of few persons, while the opposite may result when such election is made in a large city by a council having, it is most probable, many members. Experience, both in state and in municipal affairs, has shown that a numerous body cannot be converted into an eligible appointive power, as is illustrated in the frame of our state constitution, which transferred the prerogative of official appointment from the joint meeting to the governor. Where such power shall reside in our municipal constitutions is therefore a subject for legislative determination, depending on the magnitude of the given office, and which magnitude, as we have seen, is to be tested by population. A classification by population, in this respect, is consequently entirely proper.'"

We have no difficulty, therefore, in reaching the conclusion that office-holding, the power of appointment and the term have to do with the structure, machinery and powers of government. Indeed, they are some of its essentials, without which there can be no government.

It is equally clear that the act under consideration is not an illusive one—one contrived with a view of escaping the constitutional restriction.

In the case last cited (Owen *v.* Fury) the Chief Justice further said:

"The decisions cited by the counsel of the relator in support of their views, such as those of *Hightstown* v. *Glenn,* 18 *Vroom* 105, and *Helfer* v. *Simon,* 24 *Id.* 550, are not authorities applicable on the present occasion. They rest upon the ground that the statutes to which they respectively relate were illusory, a quality that cannot be ascribed to the act which we have been considering. In the act before us the method for the appointment of a city clerk is a consistent part of a general system, and as it harmonizes with such system, it presents not the faintest indication of an attempt to evade the prohibitions of the fundamental law, whereas, as in the case of Helfer *v.* Simon, just cited, a single officer, of minor importance, was directed to be appointed in cities of the second class in a way that was altogether unique, so that

it was out of unison with all the other parts of the scheme of government into which it was intruded, the consequence being that it was properly thought to be elusive as a provision contrived for some private purpose."

There is the same plain line of distinction between the elusive statute to which the Chief Justice referred and the one under consideration in the present case.

The fact that in one or both of the cities of the first class some officers are not appointed by the mayor does not render the act special. It applies to the great body of city officers, members of city boards and other employes appointed by the mayor, whether for a definite or an indefinite term, and thus formulates a general governmental scheme or system regulating their appointment and term of office.

We are also of the opinion that the act in question applies to police justices.

By its terms it applies to all city officers appointed by the mayor.

The office of police justice in Jersey City is a city office, and the incumbent is appointed by the mayor. We have already pointed out that the office was created by the charter of 1871. *Pamph. L., p.* 1140. Section 109 thereof provides "that there shall be in said city three police justices." They were granted the powers of a justice of the peace in criminal matters, and additional powers for the enforcement of ordinances. By the act of 1891 (*Pamph. L., p.* 152) the office was continued and the jurisdiction defined as in the charter. Moreover, the act of 1894 (*Pamph. L., p.* 451), under which the relator was appointed, provides "that in each city of the first class there shall be two police justices," and contains the same provisions as the charter as to powers. It provides that they shall be paid by the city; that warrants may be issued to policemen; that recognizances taken shall be to the city; that the police commissioners shall designate the places of holding court, and that the fines collected shall be accounted for to the city.

We conclude not only that the act in question is constitutional, but that it applies to the office of police justice.

The result is that the defendants are entitled to judgment.