EDMUND WILSON. ATTORNEY-GENERAL, PLAINTIFF IN ERROR. v. CHARLES D. McKELVEY AND OTHERS DEFENDANTS IN ERROR.

EDMUND WILSON. ATTORNEY-GENERAL, PLAINTIFF IN ERROR, v. WILLIAM A. HOPSON AND OTHERS, DEFENDANTS IN ERROR.

EDMUND WILSON ATTORNEY-GENERAL, PLAINTIFF IN ERROR. v. WILLIAM BERGAN AND OTHERS, DEFENDANTS IN ERROR.

Argued November 24, 1909—Decided June 20, 1910.

1. It is not unconstitutional for the legislature to provide for a board of public works. composed of four persons not more than two of whom shall be members of the same political party.
2. The act creating a board of public works in cities having a population of not less than one hundred thousand nor more than two hundred thousand inhabitants (*Pamph. L.* 1907. p. 114), is not a private, local or special law affecting the internal affairs of towns or counties. within the constitutional prohibition.

On error to the Supreme Court, whose opinion is reported *sub nom. McCarter* v. *McKelvey, ante p.* 3.

For the informant, plaintiff in error, *Richard V. Linda-bury.*

For the defendants, *John W. Griggs* and *William B. Gourley* (*Edward F. Merrey* on the brief).

The opinion of the court was delivered by

SWAYZE, J.   The question involved in this case is the constitutionality of an act of 1907 (*Pamph. L., p.* 114), creating a board of public works in cities now or hereafter having within their territorial limits a population of not less than one hundred thousand nor more than two hundred thousand inhabitants.   The act is one of three acts passed at the same session, one of which (*Pamph. L.* 1907, *p.* 79) creates a board of fire and police commissioners, and another (*Pamph. L.* 1907, *p.* 89) creates a board of finance.   In substance, these three acts establish a new city government for the city of Paterson, and give the three commissions thereby created such powers that it may fairly be said that the government is one by three commissions, appointed by the mayor.

The objections raised go to the constitutionality of the acts, which are challenged because they apply only to cities of the size mentioned, and because no more than two members of any board can be of the same political party.

As far as the latter point is concerned, we deem it unnecessary to add anything to what the Chief Justice said with his usual clearness and force in the opinion of the Supreme Court, and it is perhaps unnecessary to add to what he said in that opinion upon the other objection.   The point is an important one, however, and in view of the existing state of the decisions we think it advisable to state the reasons which have guided us.

The fundamental principle which is controlling upon the courts in passing upon the constitutionality of a statute has been nowhere better stated than by Mr. Justice Garrison, speaking for this court, in *Attorney-General* v. *McGuinness, ante p.* 346.   After reviewing the authorities, he says (at *p.*

371) : "These citations, which might be indefinitely ex-
tended, show the existence of a well-defined though self-im-
posed limitation of the judicial function of declaring legis-
lative acts to be void for unconstitutionality, which limita-
tion is for practical purposes stated to be that an act will not
be declared void by the courts if its unconstitutionality is
in anywise doubtful." He adds that the notion that a legis-
lative act will be sustained only when it is demonstrably
constitutional "in effect supplements the constitution by re-
quiring the affirmative concurrence of all three departments
of the government, where that instrument of the organic
law requires but two, viz., the legislative and the executive,
and thus, in effect, annexes to the judicial branch a *quasi*-
legislative function akin to that which the constitution itself
has annexed to the executive by the veto power." "The
ultimate judicial question," he says, "is not whether the
court construes the constitution as permitting the act, but
whether the constitution permits the court to disregard the
act, a question that is not to be conclusively tested by the
court's judgment as to the constitutionality of the act, but
by its conclusion as to what judgment was permissible to
that department of the government to which the constitu-
tion has committed the duty of making such judgment.

"A court by force of its own reasoning or by reason of
the diversity of sentiment among its own members may
often conclude that, while according to what it deems the
correct view, an act is void, still there is another view that
is permissible that would support the act. As legislators the
judges would be bound to follow their own judgment, but, as
a court, they must accord that same right to those in whom
the constitution has reposed it."

In applying these fundamental principles to a particular
case, it is important, not only to read the language of the
constitution, which is necessarily our guide, but to read that
language in view of the established meaning that it has
acquired. An examination of the numerous decisions of
our courts since the adoption of the amendment of 1875,
prohibiting private, local or special laws regulating the in-

ternal affairs of towns and counties, demonstrates that a law would be general although it embraces only a class of cities formed on the basis of their population according to the discretion of the legislature, provided the law deals merely with the structure and machinery of government, and provided the class does not appear to have been formed illusively. The cases go further, however, and demonstrate that a classification will not be deemed illusive merely because the effect is to make the legislation applicable to cities of a certain size only. Where the act relates to the structure or machinery of government, something more must appear in order that the court may hold the classification illusive, than the mere fact that only certain cities come within the class. Good illustrations are found in *Helfer* v. *Simon*, 24 *Vroom* 550, and *Canfield* v. *Davies*, 32 *Id.* 26. In the first case the classification was not based upon population alone, but the act was made applicable to cities of a certain population wherein they had an officer known as city physician. The classification did not even rest upon the existence of the particular office, but the act was limited to cities of the prescribed population having an officer who was known as city physician. It would not therefore have been applicable to a city of the same size having a similar officer known as city surgeon. Such a classification was manifestly illusive. In *Canfield* v. *Davies* the act applied only to towns, boroughs and townships which had a population of ten thousand inhabitants or over according to the last census. This was not a classification according to population, but a classification according to population at a particular time, and was properly held illusive.

On the other hand, there are numerous cases where legislation relating to the structure and machinery of municipal government has been sustained where the classification was based upon population alone, and that without regard to the number of the municipalities that might thereby be brought within the class. It is unnecessary to refer to legislation affecting cities having over one hundred thousand population prior to the act of 1901 (*Pamph. L.*, *p.* 78) or over one

hundred and fifty thousand since that act, that is to say, to cities called cities of the first class, nor is it necessary to refer to cases involving legislation affecting cities of the smallest class. These are terminal classes, and a distinction might properly be made between legislation affecting the largest cities only, or legislation affecting the smallest cities only, on the one hand, and legislation affecting a mediate class, such as the present. A distinction between the needs of a city like Newark or Jersey City, and the needs of a city like Englewood or Long Branch, is obvious. The distinction between the needs of Newark and Jersey City, and the needs of Paterson, is not so obvious, and, if there is to be more than two classes, it is clear that the mediate class must in some respects resemble the smaller cities, and in other respects resemble the larger cities. The question has been presented and the constitutionality of legislation sustained by the Supreme Court in many cases. A series of cases is to be found in 26 *Vroom*. *Owens* v. *Fury*, 26 *Vroom* 1; *Matheson* v. *Caminade, Id.* 4; *Baker* v. *Delaney, Id.* 9; *Oler* v. *Ridgeway, Id.* 10; *McLean* v. *Gibson, Id.* 11. In these cases the basis of population upon which the classification rested was so fixed that the three cities of Paterson, Camden and Trenton were selected out of the class known as cities of the second class. The legislation was made applicable to them alone. It was, however, sustained, because it related to the structure and machinery of government, and it was distinctly held that population bore a reasonable relation to the subject-matter of the statutes in question.

Counsel for the attorney-general necessarily argues that *Owens* v. *Fury* and *Matheson* v. *Caminade* are not safe authorities upon which to rely. If they are safe authorities they are conclusive against the attorney-general in the present case, for the act now in question, which may be called the Board of Public Works act, is modeled after the act which was sustained in *Owens* v. *Fury*. The title is the same, word for word. The description of cities, to which the act is applicable, varies only in substituting for "fifty thousand" and "one hundred thousand" the words "one hundred thousand"

and "two hundred thousand," and adding the words "according to the United States or state census." In form, therefore, the act is general, and while at the time of its adoption it may have applied to Paterson alone, the legislature must have anticipated that the time was not far distant, probably not farther than the census of the current year, when Camden and Trenton would come within the class. Owens v. Fury has been frequently cited and referred to since its decision as authority for the principle that the legislature may classify cities on the basis of their population for purposes relating merely to structure and machinery of government. *Parker* v. *Newark,* 28 *Vroom* 83; *Wanser* v. *Hoos,* 31 *Id.* 482 (at *p.* 539); *Varney* v. *Kramer,* 33 *Id.* 483; *McArdle* v. *Jersey City,* 37 *Id.* 590 (at *p.* 595); *McCarthy* v. *Queen,* 47 *Id.* 144.

In Varney v. Kramer the object of the act under review was to repeal the act which had been sustained in Owens v. Fury, but the legislature made the repealing act applicable not to all the cities having a population between fifty thousand and one hundred thousand, but to cities having a population between fifty-five thousand and one hundred thousand. The object was plain. It was to do away with the legislation of 1892 affecting only Paterson, Camden and Trenton, and to adopt new legislation which should affect those three cities only. Between the dates of the two acts Hoboken had grown to have a population exceeding fifty thousand, and the object of raising the lower limit was to exclude Hoboken from the operation of the act, yet the act was sustained on the authority of Owens v. Fury.

In Wanser v. Hoos this court dealt with an act affecting only cities of the first class, and the act was pronounced unconstitutional only because the majority of the court held that it did not relate to the structure or machinery of government. Chief Justice Depue, in writing the opinion, cited Owens v. Fury and Matheson v. Caminade, and said: "In these and all the cases in which statutes based on a classification on the ratio of population were sustained, for the reason that they related to the structure or machinery of municipal

government, such legislative acts were directed immediately to the structure of the municipality itself or to the powers or the machinery of municipal government." He held that the act then under consideration was unconstitutional because it in nowise related either to the machinery or the powers or the structure of the city government. He would hardly have placed the decision upon that ground if he had deemed it possible under the authorities to hold the classification illusive, because the act applied to two cities only, and his citation of Owens v. Fury and Matheson v. Caminade without disapproval, and his effort to distinguish those cases from the case he then had in hand, amounted, we think, to an approval by this court of those decisions. So Justice Dixon thought. *Varney* v. *Kramer, supra.* The question must have been considered by the court in Wanser v. Hoos, for both Justice Dixon and Justice Collins in their dissenting opinions called attention to Owens v. Fury and Matheson v. Caminade. In *McArdle* v. *Jersey City, supra,* Chief Justice Depue, speaking for this court, cited these cases as authority. In *McLaughlin* v. *Newark, 28 Vroom* 298, Justice Dixon, speaking for the Supreme Court, said: "It thus appears that the statute deals only with the structure of the municipal government—the formation of the machinery by which the affairs of the city are to be regulated; that, for such legislation, the municipalities of the state may be distributed into classes constituted on the basis of their population, seems to be settled beyond dispute in this court." And he cited as authority Matheson v. Caminade among others. It is true that his remark applied only to the Supreme Court, but the judgment was affirmed by this court upon Justice Dixon's opinion, 29 *Id.* 202, and the point now under discussion must have been called to their attention, for it is made the basis of the dissenting opinion of Mr. Justice Garrison.

In *Foley* v. *Hoboken, 32 Vroom* 478 (at *p.* 480), the rule was thus stated: "Legislation for municipalities may deal with the municipal apparatus as such, or it may affect the citizens in other respects. Where the governmental apparatus alone is the subject of legislation, population ordinarily so

fully connotes all the essential considerations that the general subject is, in the absence of palpable evasion, a question for legislative judgment. But where the legislation affects the citizen or taxpayer in other respects, classification by mere population is substantial or illusive according to the criterion already indicated, hence may present a question for judicial control." The criterion thus referred to is whether the classification is substantial or illusive, "substantial in this case meaning that the limitation is incidental, consequent upon the character of the legislation; illusive, that the selection is extraneous from it."

We find nothing in the act creating the board of public works which shows a palpable evasion of the constitutional requirements. The fact that the act at present is applicable only to Paterson is not sufficient, since it expressly contemplates that other cities may become subject to the act. The fact that it creates a new form of government for Paterson, different from that in existence in smaller municipalities and from that in existence in larger municipalities, is not enough, for the same argument could have been used in any of the cases we have cited. If there are to be more than two classes of municipalities there may, of course, be more than two different forms of government. The form provided by this act is in some respects more centralized than the form provided for smaller municipalities. It would be difficult to say whether it is or is not more centralized than that provided for the cities of the first class.

The powers given to the board of public works under the act of 1907 are much more extensive than those given to the street and water commissioners in cities of the first class by the act of 1891, including the power to ascertain and establish the boundary lines of rivers and streams within the city, to regulate the planting, rearing, trimming and preservation of ornamental and shade trees in the streets of the city, to regulate and prohibit advertising, the ringing of bells and other noises in the streets and public places; to regulate and prohibit the use of guns, pistols, firearms and fireworks of all descriptions within the city; to regulate and prohibit the

use of soft coal in factories, power houses and locomotives; to regulate and prohibit swimming or bathing in the waters around the city; to regulate weights and measures; to cause weights and measures to be examined by some person appointed for that purpose. Although in these respects the power of the board of public works is greater than the power of the street and water commissioners, on the other hand, the power to borrow money and negotiate loans, which is conferred by section 19 of the act of 1891, is not conferred upon the board of public works by the act of 1907; on the contrary, by the act creating the board of finance (*Pamph. L.* 1907, *p.* 89), the sole power to borrow money is vested in that board. The board of public works under the act of 1907 has power to elect the street commissioner, city engineer and surveyor, inspector of buildings, inspector of lamps, wells and pumps, and the necessary inspectors, supervisors, clerks and employes, and to employ assistant engineers or surveyors, but has no power to employ counsel, while the street and water commissioners may employ counsel. In short, while the two boards are similar, they are different, and it is impossible for us to say the differences are not properly related to the difference in size of the cities concerned. It may well be that in cities of under two hundred thousand population it is advisable to have the power of appointing officers and of hiring employes placed in a commission, while in smaller cities it may properly be placed in the common council and in the larger cities in the mayor. The differences between the proper requirements of cities may shade off imperceptibly as the size of the city varies, but under our decisions such matters must be held to have a proper relation to population.

We think, therefore, that the Supreme Court was right in its view that the legislation was constitutional, and the judgment is therefore affirmed.

GARRISON, J. (dissenting). From the earliest of the decisions in the constitutional amendments of 1875 (*Van Riper* v. *Parsons,* 11 *Vroom* 1) down to the latest (*McCarthy* v. *Queen,* 47 *Id.* 144, 828), it has been expressly held that "if

the classification be illusive, being contrived with a view of escaping the constitutional restriction, it can lend no support to legislation connected with it."

The present case is an illustration of such a contrivance with such a result, and hence falls under the condemnation of the long line of cases referred to, the first and last of which, as well as most that come between, were cases "relating to the structure and machinery of municipal government" if that circumstance be of any significance upon the construction of the constitution or the duty to enforce its plain provisions.

*For affirmance*—SWAYZE, PARKER, VOORHEES, BOGERT, VREDENBURGH, VROOM, GRAY, DILL, CONGDON, JJ.   9.

*For reversal*—THE CHANCELLOR, GARRISON, BERGEN, JJ.   3.