JAMES D. ANDERSON, RELATOR, v. WILLIAM S. MYERS.

Argued June Term, 1908—Decided November 9, 1908.

1. The state is none the less a party to actions of *quo warranto*, notwithstanding that in certain cases private suitors are by statute permitted to institute and conduct the proceedings without leave of this court and without using the name of the attorney-general, and under present practice the name of the state is not used in entitling the cause.

2. Section 4 of "An act to establish an excise department in incorporated towns and cities of this state" (*Pamph. L.* 1901, *pp.* 239, 241), requires the members of boards of excise commissioners within ten days next succeeding the appointment of such board, to take an oath of office, and provides that "should any person or persons appointed to be a member or members of such board fail to qualify as herein provided within said ten days, such failure shall cause a vacancy * * * to exist in said board * * *." *Held*, that this latter provision applies to reappointments as well as to original appointments to membership on such boards, and that in case of reappointment unless the appointee qualifies by taking the oath within ten days after his appointment, his right to the office is gone.

3. In such case, under section 4 of the *Quo Warranto* act of 1903 (*Pamph. L.*, *p.* 375), one who has been appointed to fill such vacancy, and has qualified, may in the same action assert the right of the public to oust the intruder and his own right to take and hold the office.

---

On *quo warranto*. On demurrer to information.

Before Justices GARRISON, SWAYZE and PARKER.

For the relator, *Nelson B. Gaskill,* assistant attorney-general.

For the respondent, *Alan H. Strong.*

The opinion of the court was delivered by

PARKER, J. This is an action of *quo warranto* begun pursuant to section 4 of the act of April 8th, 1903 (*Pamph. L.,* p. 375), which section was originally enacted in 1884 (*Gen. Stat., p. 2633, pl. 4*), and permits any citizen of this state, believing himself entitled to a municipal office or franchise, to file as relator an information in the nature of a *quo warranto* against an alleged intruder and without obtaining the leave of this court to file such information in the name of the attorney-general as was formerly necessary and still is necessary when the relator is not a claimant.

Under the act of 1884, as originally passed, it was held that only the title of the respondent to the office could be inquired into. *Davis* v. *Davis,* 28 *Vroom* 203. But in 1895 two further acts were passed, one approved February 18th (*Pamph. L., p.* 82), providing that on a proper record this court might determine the title of the relator as well as the respondent, and enforce its judgment by proper process; and another, approved March 19th (*Pamph. L., p.* 344), providing that on a judgment of ouster and in favor of a relator the court may make appropriate orders regarding the surrender of the office and the transfer of its records. The effect of these various acts has been described *obiter* as turning the suit into a private controversy between the parties. *Manahan* v. *Watts,* 35 *Vroom* 465, 470. We shall have occasion to touch on this point presently.

The record before us raises the issues—*first,* whether respondent usurps or intrudes into the office of member of the board of excise commissioners of the city of New Brunswick, and *second,* if so, whether relator is entitled to hold said office. It consists of the information and demurrer thereto.

The demurrer questions the sufficiency of the facts pleaded in the information and admitted by the demurrer to establish relator's title to the office even if a vacancy exist, but this defence was not argued or briefed, and our examination of the case satisfies us that if a vacancy existed on June 1st, 1907, the date of relator's appointment to the office, relator is entitled to hold it. The real controversy relates to the title of respondent. It appears that under and by virtue of the act of 1901 for the establishment of an excise department in cities, the city of New Brunswick in 1905 passed an ordinance to create a board of excise commissioners, a copy of which was duly filed as provided by law, and that the judge of the Court of Common Pleas in due course appointed in September, 1905, the three members of the board for terms of one, two and three years, respectively, the respondent, Myers, being appointed for one year; that at the expiration of his term, on September 11th, 1906, he was again appointed by the court to succeed himself, for a term of three years, but failed to qualify by taking the oath of office within ten days as required by the statute of 1901. It is also alleged that he failed to take certain other oaths provided by the city charter, and that he became further disqualified by removing his residence from New Brunswick, the act requiring members of the excise board to be *residents and legal voters* within their respective municipalities. These latter claims we have found it unnecessary to discuss.

Relator is met at the outset by the proposition that the state should be a party to this proceeding, but does not appear on the record as such. It is true that the state is not named in the title of the cause, nor is the attorney-general brought into the body of the information. The questions then arise, should the state be a party, and if so, is it to a legal intent a party in this proceeding? We think both these questions should be answered in the affirmative. In *Davis* v. *Davis, ubi supra,* the state was a party in name and in fact, for the court, in awarding judgment of ouster in that case, imposed a substantial fine for the usurpation of the office. And Chief Justice Beasley, in discussing the effect of the act of 1884,

was careful to assert a prerogative control of this court over the action and to deny the competency of the legislature to confine it by statutory enactment. It is true that this was before the acts of 1895 were passed, but we cannot see that they have altered the situation in any way as affecting the presence of the state as a party to the suit. So far from abridging the powers of this court, they have enlarged them by enabling the court to adjudge the title of the claimant and place him in possession. The remark of the late Justice Lippincott, in *Manahan v. Watts, supra* (at *p.* 470), that "in this proceeding it is merely the private rights of the parties which are affected and not a case affecting public interest, where the people are the real as well as the nominal prosecutor," was not, in our estimation, necessary to a decision of that case, and we cannot concur in it.

Whatever the entitling of the suit, or the form of the record in such a case, the state is still a party so far as to give this court full control of the litigation in the public interest. To hold otherwise would be to paralyze the arm of this court, to disable it from inflicting punishment in a proper case upon a usurper, and to enable public offices to be transferred between private individuals by collusive suits. Relator's counsel, no doubt, omitted the name of the state from the title of the cause in deference to the rule of this court adopted at November term, 1900, and appearing as part of rule 15, "the name of the state shall not be used merely because of the nature of the writ or proceeding, but instead the name of the party in interest shall be used." Before the adoption of this rule came the act of 1900, chapter 48 (*Pamph. L., p.* 72), section 2 of which is distinctly narrower in its scope; "the name of the state *shall not be made a part of the title of any* cause or proceeding merely because of the nature of the writ or other proceeding by which it is taken into court." The same course was pursued without criticism in *Hayter v. Benner,* 38 *Vroom* 359, and *Bumsted v. Henry,* 45 *Id.* 790, both cases under the fourth section of the act of 1903. But, in our opinion, the state is none the less a party because of the right conferred on a certain class of private relators to institute the

suit, and a mere rule of practice neither has, nor was intended to have, the effect of eliminating it as such party. Even if the omission of the state from the title be a defect, it is merely a formal one, not the subject of general demurrer, and amendable. This ground of demurrer must therefore fail.

The question then arises whether respondent forfeited his office by failing to take the oath within ten days after appointment. The provision of the statute (*Pamph. L.* 1901, *p.* 239) on this point is as follows: Section 3 provides for the original appointment of members for one, two and three years, the appointment of successors after expiration of terms and the filling of vacancies for unexpired terms. Section 4, that within ten days they shall meet and organize by electing a chairman and taking a prescribed oath; that the city or town clerk shall be *ex officio* clerk of the board; and then goes on to say, "should any person or persons appointed to be a member or members of any such board fail to qualify, as herein provided, within said ten days, such failure shall cause a vacancy or vacancies to exist in said board, which shall be filled as hereinbefore provided." It is argued that this clause does not refer to any but the original appointments, and hence that when Myers failed, as his demurrer admits he did, to take the oath within ten days after his second appointment, it was an omission curable by his later qualification. We think, however, that the clause quoted was intended to refer to all appointments, original or otherwise, and therefore that by Myers' non-compliance a vacancy arose. Counsel for respondent again argues that no vacancy can exist until it is judicially declared, relying on *Clark* v. *Ennis,* 16 *Vroom* 69. That case, however, related merely to the validity of process executed by a sheriff who, though elected for three years, failed to renew his bond annually as required by law, and was decided on the principle that, notwithstanding the statute provided that such failure should render the office vacant, he was still sheriff *de facto* until a new sheriff legally took his place. But in the case at bar the oath is, in our judgment, a prerequisite to qualification, and while respondent's acts as an officer *de facto* would be sustained on public grounds

(*Rosell* v. *Board of Education,* 39 *Id.* 498; 41 *Id.* 336), the taking of the oath in form as required by law is as essential to his enjoyment of the office as the appointment itself. So it was held by this court in cases where the relator claiming the office had failed himself to qualify by taking the oath (*Hayter* v. *Benner, supra; Manahan* v. *Watts,* 35 *Id.* 465), and we conceive that the same principle must apply to the respondent whose title is attacked. There seems to be no valid reason why in such case a legal appointment cannot be made to fill such vacancy, nor why the appointee, having legally qualified, cannot assert in the same suit the right of the public to oust the intruder and his own right to take and hold the office. The statute seems to be framed to meet just such a contingency, and the public good is subserved by avoiding a hiatus in the tenure.

Our conclusion, therefore, is that the demurrer should be overruled with costs, and judgment entered, that the respondent should be ousted from the office of excise commissioner of New Brunswick and that the relator is entitled thereto.