HARRY B. SALTER, PROSECUTOR, v. WILLIAM F. BURK ET AL., COMMISSIONERS OF THE CITY OF TRENTON.

Submitted March 21, 1912—Decided July 10, 1912.

1. By the act entitled "An act relating to, regulating and providing for the government of cities, towns, boroughs and other municipalities within this state" (*Pamph. L.* 1911, *p.* 462), the management of municipal affairs is entrusted to a board of commissioners, but it largely leaves the mechanism of the adopting city's government and the provisions of its charter untouched. It does not alter general laws or charter provisions relating to the government of such city, except when inconsistent with its provisions.

2. Where the law prescribes the term of a municipal officer, it is beyond the power of the board of commissioners of a municipality to elect for a greater or less term, or for an indefinite term, and an attempt to do so will not constitute a valid appointment, and a vacancy in contemplation of law will still exist in such office.

3. One complaining of the illegality of the election to office of another in his stead, must first show that he himself has legal title to it.

4. The application of the Civil Service act (*Pamph. L.* 1908, *p.* 235) must be limited to the protection of officers *de jure,* and cannot be extended to keep in office *de facto* officers.

On *certiorari.*

The prosecutor, claiming to be the clerk of the city of Trenton, prosecutes this writ to bring under review a resolution of the board of commissioners of Trenton, passed October 13th, 1911, whereby Frank Thompson was elected city clerk, his election to take effect December 1st, 1911.

The following facts appear by stipulation and affidavits

taken: On June 20th, 1911, the so-called Commission Government act (*Pamph. L.* 1911, *p.* 462), or, as it is sometimes known, the Walsh act, was duly adopted by the voters of the city of Trenton; on August 15th, 1911, at a municipal election held therein, a board of five commissioners, pursuant to said act, were duly elected and duly qualified and organized on August 22d, 1911; after organization, they duly adopted the following preamble and resolution, spoken of as the omnibus resolution:

"*Whereas,* In and by the act of the legislature of the state of New Jersey, entitled 'An act relating to, regulating and providing for the government of cities, towns, boroughs and other municipalities within the state,' approved April 25th, 1911, it is provided that: 'Upon the organization of the commissioners in any such city, elected under this act, the city council or other governing body or bodies theretofore acting as governing body or bodies in such city and having any other functions, shall be *ipso facto* abolished, and the terms of all councilmen or aldermen, and all other officers, whether elective or appointive, shall immediately cease and determine: providing, however, that nothing herein contained shall be construed to affect in any way the term of office of any policeman, fireman or other employe of any police or fire department, veteran of any war or other official employee now protected by any tenure of office act; and

"*Whereas,* It is deemed inexpedient and inadvisable by hasty and injudicious action to fill by immediate appointments the several offices by the above recited act made vacant; and

"*Whereas,* It is essential and advisable in the judgment of this body that some provision be made, of a temporary character, for the transaction and conduct of the business of the several city departments and offices; therefore, be it

"*Resolved,* That all and singular the officers, servants and employees now in the service or employ of the city in any office or department thereof, except the mayor of said city, the common council and the members of the boards of police commissioners, fire commissioners and excise commissioners,

respectively be, and they are hereby continued in their several and respective offices and employments, at the same rate of compensations as is now respectively received by each, until the further order of this commission; and be it further

"*Resolved*, That nothing herein contained shall be deemed or adjudged to be an appointment to any position or office, but that all and singular the officers, servants and employees of the city aforesaid who shall continue in the city employ under the provisions of this resolution, except those now protected in the tenure of their offices or positions by any law of this state, shall hold their several and respective offices and positions at the pleasure of this commission, and shall be deemed to have waived any personal privileges or benefit respecting the periods of their respective appointments under any law of this state."

The prosecutor, who was the city clerk at the time of the adoption of the Walsh act, continued to act as such after the passage of the omnibus resolution.

On October 2d, 1911, the commission passed the following resolution:

"On October 2d, Mr. Lee moved that the commissioners proceed to the election of a city clerk, city treasurer and city comptroller to serve until December 1st, 1911. Mr. Lee nominated Harry B. Salter for city clerk and he was elected."

On November 7th, 1911, at the general election, the Civil Service act (*Pamph. L.* 1908, *p.* 235) was adopted by the voters of the city of Trenton. The writ was allowed before the last resolution went into effect.

Before Justices BERGEN, VOORHEES and KALISCH.

For the prosecutor, *McCarter & English*.

For the defendants, *Charles E. Bird*.

The opinion of the court was delivered by

VOORHEES, J. The controversy in this case concerns the legality of a resolution appointing one Thompson to be city

clerk on and after December 1st, 1911. Salter, the prose-
cutor, had served under the charter of Trenton (*Pamph. L,*
1874, *p.* 331) for several years. His last election, by vote·
of a majority of all the members of the council, was January
1st, 1910, and the term having been fixed by statute at three·
years (*Pamph. L.* 1900, *p.* 415), his term would have expired·
January 1st, 1913, but for the adoption of the Walsh act.

The reasons assigned by the prosecutor for setting aside the·
resolution brought up may be concisely stated as follows:
That there was no vacancy in the office at the time of Thomp-
son's election; that the prosecutor was protected by the Civil·
Service act, and interference with his tenure of office was un-
warranted, no cause for his removal having been assigned or·
hearing afforded to him.

The title of the Walsh act is, "An act relating to, regu-
lating and providing for the government of cities, towns,
boroughs and other municipalities within this state." *Pamph.
L.* 1911, *p.* 462.

Its provisions very clearly indicate a new form of govern-
ment in such municipalities as may adopt it, to take the place·
of the then existing form, and as well in express terms de-
pose those in office at the time of its adoption.

The second section says that "upon the organizing of the
commissioners, the city council or other governing body or
bodies thereofore acting  *  *  *  shall be *ipso facto*
abolished, and the terms of all councilmen or aldermen,
and all other officers whether elective or appointive, shall
immediately cease and determine."

The fourth section gives to the commissioners "all ad-
ministrative, judicial and legislative powers, and duties now
had and possessed and exercised by the mayor and city
council, and all other executive or legislative bodies in said
city, and have complete control over the affairs of the city."

Moreover, the eighteenth section contains a repealer of all
inconsistent legislation, and the eighth section vests an adopt-
ing city with "all powers necessary for its government not in
conflict with the laws applicable to all cities of this state or
the provisions of the constitution." More appropriate lan-

guage to describe a complete obliteration of the former gov-
ernment and a comprehensive constitution of a new govern-
ment in its stead could not have been chosen.

The right of the legislature to abolish its agency created
by it, in the form of a municipal corporation, whereby it
may the more readily administer local affairs, if not con-
ceded, is not contested, and it is admitted that in the present
case the term of the prosecutor as city clerk came to an end
when the city began its government by commission.

But the terms of the act disclose that it was not intended
in any sense to be a charter or grant of municipal power, ex-
cept in a most general way. The management of municipal
affairs is entrusted to a board of commissioners, but it largely
leaves the mechanism of the city's government and the pro-
visions of the charter untouched. It does not alter general
laws or charter provisions relating to the government of the
city except when inconsistent with its provisions. Its effect
is to impose upon the board of commissioners the duty to
fill existing offices, made vacant by the adoption of the act
and the organization of the board, under the laws and
ordinances then in existence. Authority for this statement
is sufficiently contained in the above noted sections of the
act. That the city clerk to be thereafter elected by the com-
missioners must be elected for a term of three years, must
therefore be conceded, for neither the statute of 1900 above
cited, nor the act of 1911 (*p.* 679), making the term three
years, and until a successor shall be appointed and qualified,
was legislation inconsistent with the Walsh act. Hence an
unqualified election of a city clerk would have constituted the
selected person such for the term then prescribed by law,
namely, three years.

If there was a vacancy, the right to elect Thompson to the
office for the legal term existed in the board of commis-
sioners. It cannot be asserted that such occupation of the
office by the prosecutor as may have constituted him a *de
facto* officer, as to the public and third parties, could be of-
fered to show that there was no vacancy. As against the
municipality, there was in fact a vacancy unless the incum-

bent was an officer *de jure. Anderson* v. *Myers,* 48 *Vroom* 186; *Oliver* v. *Jersey City,* 34 *Id.* 634; *Loper* v. *Mill-ville,* 24 *Id.* 362; *Heaviland* v. *Freeholders,* 35 *Id.* 176. Unless the office was filled *de jure* by the omnibus resolution, or by the subsequent one of October 2d, a vacancy existed at the time of the passage of the resolution under review. Neither of these resolutions was a legal appointment. Each attempts to fix a term less than that provided by law, which was beyond the power of the board. Nor could they fix an indefinite term. *O'Rourke* v. *Newark,* 37 *Id.* 109; *affirmed, Id.* 265, states:

"The fact that the common council attempted to fix a term for the positions to which the prosecutor was appointed different from that which the city charter fixes is of no consequence. Such a resolution is of no force as against the express provisions of the city charter."

The prosecutor argues that the resolutions appointing him to office were illegal, because it continued him in office during the pleasure of the commission an indefinite term; the other because it elected him to serve for a definite term less than the three year term prescribed by law. He then contends that while the appointment is in these particulars unwarranted, it is nevertheless sufficient to continue him in office for the full legal term, although contrary to the express language of the resolutions and to the expressed intention of the appointing body. Our opinion is that if the appointment was invalid for the reasons urged by the prosecutor, it was also invalid for the legal term.

It was not an appointment for three years which the law prescribed, and therefore the attempt by such resolutions to fill the office must be deemed invalid, and hence a vacancy, in contemplation of law, existed in the office warranting the municipal action of October 13th, whereby the office of city clerk was filled. One complaining of the illegality of the election to office of another in his stead must first show that he himself has legal title to it.

The Civil Service act has no application to this case. It was adopted by the city after the adoption by it of the Walsh

act, and, therefore the provisions of the latter act prevail against the former. Nor could they apply to a mere *de facto* officer.

To construe the Civil Service act so as to keep in office one holding such office without right, would subvert the beneficent purposes of that legislation. It is manifest that its application must be limited to the protection of officers *de jure*.

The resolution under review will be affirmed, with costs.