MARTIN P. DEVLIN, Jr., RELATOR, v. ALBERT COOPER, Jr., DEFENDANT.

Argued October 3, 1939—Decided February 5, 1940.

156

Before BROGAN, CHIEF JUSTICE, and Justices DONGES and PORTER.

For the relator, *Frank I. Casey.*

For the defendant, *William Reich.*

The opinion of the court was delivered by

PORTER, J.   To the information, in the nature of a *quo warranto,* the respondent filed a plea to which issue was joined by demurrer of the relator.

The relator, Mr. Devlin, claims to be entitled to retain the office of police justice of the city of Trenton to which post he had been appointed on February 17th, 1937, by the city council for four years and from which he has been excluded since June 1st, 1939.   In 1937, it appears that the city was being governed under the municipal form of government with a city manager; that on April 11th, 1939, by referendum vote, the commission form of government, the "Walsh act," was adopted; that pursuant thereto, on May 16th, 1939, an election was held and a board of five commissioners were duly elected; on June 1st, 1939, after previously organizing, a resolution was adopted distributing the executive, administrative, judicial and legislative powers, authority and duties, into and among the five departments.   At that meeting the authority over the Police Courts was assigned to the depart-

ment of public safety. On June 8th, 1939, the director of that department appointed Albert Cooper, Jr., defendant, police justice to the exclusion of the relator.

The relator takes the position that this action was void and of no effect; that his term did not cease and determine on June 1st, 1939, but continued for the term for which he was appointed, until February 16th, 1941. He also attacks the legality of the appointment of the defendant claiming that the authority to appoint was in the board of commissioners as a body and not vested in the director of public safety, so that the appointment was a nullity. This point need not be considered in view of the decisions that the relator must establish his own right to the office, and the infirmity of defendant's title is of no benefit to him. The burden is on him to establish his own right to the office. *Salter* v. *Burk,* 83 *N. J. L.* 152; *McGlynn* v. *Grosso,* 114 *Id.* 540; *Murphy* v. *Cuddy,* 121 *Id.* 209.

It appears that the city of Trenton at the time of relator's appointment, and since, has been operating under the Civil Service law. Under the provisions of that law the office of police magistrates are in the unclassified service. *R. S.* 11:22-2G.

The sole question for our consideration is whether the term of office of relator terminated on June 1st, 1939, when the new government became fully organized. We conclude that it did not. The Walsh act was enacted in 1911. Under its terms, *R. S.* 40:71-9, when such change in the form of Municipal Government becomes effective, all terms of those in office, "whether elective or appointive, shall immediately cease and determine" and their powers and duties shall "pass to, vest in and be performed by the board of commissioners elected under the provision of said chapters 70-76." It is also provided in the same section as follows: "Nothing herein contained shall be construed to affect in any way the term of any policeman, fireman, or other member of any police or fire department, veteran of any war, or other officer or employe now protected by any tenure of office." At the time of the passage of that act there was no tenure act which would protect relator. In 1934, however, there was enacted a statute,

chapter 110 (now *R. S.* 11:28-2) which provided that where a change in the form of government occurred "the officers and employes or persons in the classified and unclassified service of any subdivision of government of this state where the Civil Service laws are operating, shall be continued in service and all rights, enjoyed as to pensions, terms of service and salaries, shall continue notwithstanding such transfer, combination or unification of governmental functions, or change of form of government."

Did relator have tenure when the change occurred? The Walsh act as stated expressly excepts those officials or employes *now protected* by any Tenure of Office act. At the time of his ousting from office he was protected by tenure under statute above quoted, *R. S.* 11:28-2. The adoption by the legislature of the Revised Statutes in 1937 was a re-enactment of the statutes *supra* and were made effective where time was stated as of the date of the re-enactment. It must be observed that this enactment was not only a revision but was an independent enactment superseding all pre-existing general law. This court so held in a recent opinion of Mr. Justice Heher in *State* v. *Czarnicki,* 124 *N. J. L.* 43.

The defendant argues that if we conclude that the statute, *R. S.* 11:28-2, relating to tenure applies, it is void because unconstitutional in that it is a local or special law regulating the internal affairs of municipalities.

We think not. It is not illusory nor limited to any group or class of municipalities but applies equally to all throughout the state which may unify, combine or transfer the functions of government or where the form of government is changed.

It follows that the relator being protected by tenure of office under the statutes referred to is entitled to the office and should be restored to it. A judgment of ouster will be entered against the defendant.