ANTHONY MARTINI, RELATOR, v. FRANK DE MURO, DEFENDANT.

Decided April. 8, 1948.

·On *quo warranto.*

For the relator, *Isadore Rabinowitz.*

For the defendant, *Heller & Laiks.*

DAVIDSON, C. C. J.   This is an information in the nature of a *quo warranto*, relator, Anthony Martini, averring that ·defendant, Frank De Muro, has usurped and unlawfully 'holds the office of superintendent of public works in the Department of Public Works of the City of Passaic.   There is little substantial dispute of the essential facts and deter-

mination of the issue must primarily rest upon the documentary exhibits offered at trial.

Relator, on May 23d, 1939, was appointed as street superintendent in the Department of Public Works, for a term ending May 23d, 1942; he held over until December 15th, 1942, when he was appointed as superintendent of streets for a term of three years ending December 14th, 1945; he again held over until January 14th, 1947, when he was appointed as superintendent of public works in the Department of Public Works, for a term of three years ending January 14th, 1950. He subscribed to an oath of office upon each appointment and in each instance received a certificate of appointment from the city clerk. No charges were preferred against him nor was public hearing held, and on September 23d, 1947, he was notified of his summary dismissal. He claims title to the office and seeks ouster of defendant.

Defendant, on September 23d, 1947, was appointed as superintendent of streets, to be known as superintendent of public works, in the Department of Public Works, for a term of three years ending September 23d, 1950, and duly subscribed to an oath of office. He interposes two defenses to relator's claim of title: first, that his appointment was valid by reason of the fact that the post was vacant at that time; secondly, the procedural defense that the superintendent of public works is a position, not an office, and consequently the remedy of *quo warranto* is not available to test title.

There is no substance to defendant's first contention, based upon a letter dated September 15th, 1944, addressed to Hon. Guy A. De Muro and Mr. William F. Laporte by Mayor Nicholas Martini, Director of Public Works, which letter he seeks to construe as an appointment of relator. The evidence clearly indicates that this was nothing more than notification to the fiscal officers of an increase in salary authorized under an ordinance adopted August 8th, 1944. It refers specifically to "the recent ordinance revising salaries" and cannot possibly constitute an appointment for no vacancy existed, as relator was already occupying the office at that time for a definite term which had not yet expired, and it would, therefore, have been legally ineffective in any event.

"The sole remaining question is whether this action is available to relator, for it is conceded that *quo warranto* is the exclusive legal remedy to try the title to an office. *Duncan* v. *Board of Fire, &c., Commissioners,* 131 *N. J. L.* 443; 37 *Atl. Rep.* (*2d*) 85. It thus becomes necessary to determine whether defendant, as superintendent of public works, is the incumbent of an office in contemplation of law, as distinguished from a position.

The generally accepted definitions consistently followed with approval are set forth in *Fredericks* v. *Board of Health,* 82 *N. J. L.* 200; 82 *Atl. Rep.* 528:

"An office is a place in a governmental system created or recognized by the law of the state which either directly or by delegated authority assigns to the incumbent thereof the continuous performance of certain permanent public duties. * * *

"A position is analogous to an office, in that the duties that pertain to it are permanent and certain, but it differs from an office, in that its duties may be nongovernmental, and not assigned to it by any public law of the state."

The City of Passaic was incorporated in 1873 and thereafter operated under a councilmanic system until the commission form of government was adopted under the Walsh Act in 1911. The City Charter provided under title II, paragraph 9 for the appointment of a superintendent of streets; paragraph 15 provides that any person appointed to any office take and subscribe an oath of office; and title IV, "Powers and Duties of Officers," paragraph 29 provides that:

"The Superintendent of Streets shall perform such duties as the City Council shall by ordinance or otherwise prescribe."

On December 4th, 1894, the City Council adopted an ordinance concerning the general municipal affairs of the City of Passaic and under chapter 12, subdivision 2, assigned to the street superintendent many specific permanent public duties, including the power to grant and renew permits under such restrictions as he might deem necessary; to order removal and subsequent sale of articles unlawfully encumbering any street or public place; to grant permits for street openings and providing that replacement be done to his satisfac-

tion and under his supervision; providing for notification of the superintendent of streets after completion of work for which permits were granted; and under section 3 charging the superintendent of streets with the duty of keeping an accurate payroll account of each person employed by him on account of the city, or furnishing teams or horses and carts at work on the streets, charging him with submitting to the City Council a complete payroll on the first Monday in each month; and placing upon him the further duty of bringing actions in the name of the city for the recovery of penalties incurred by the violations of city ordinances respecting streets and public places.

*R. S.* 40:171–166, *L.* 1899, *ch.* 34; *N. J. S. A.* 40:171–166, provides that in all cities of the second class of this state wherein they have an officer known as a superintendent of streets and sewers or superintendent of streets, the legislative body of any such city may fix the term and annual salary of such officer.

*R. S.* 40:72–3; *N. J. S. A.* 40:72–3 (the Walsh Act), provides:

"All ordinances or resolutions heretofore passed in any such municipality, not inconsistent with the rights and powers herein granted shall remain in full force and effect until altered or repealed by the commissioners in the manner herein provided."

And *R. S.* 40:71–8; *N. J. S. A.* 40:71–8, continues the corporate existence of any municipality adopting the Walsh Act, *N. J. S. A.* 40:70–1, *et seq.,* and further provides that all laws, general or special, relating to such municipality, shall, except so far as is inconsistent with said act, apply to such municipality, and it shall have and exercise the powers and duties thereby conferred or imposed.

*R. S.* 40:72–2; *N. J. S. A.* 40:72–2, authorizes the Board of Commissioners to create such subordinate boards and appoint such officers as it may deem necessary for the proper and efficient conduct of the affairs of the municipality, and accordingly, "An Ordinance to create certain of the subordinate municipal offices, to prescribe their powers and duties, and to fix their respective salaries and terms of office," adopted

by the Board of Commissioners on December 8th, 1911, shortly after the adoption of the Walsh Act, provided for the appointment of a superintendent of streets for a term of two years; annual salary $1,200. Section 2 attributes to the respective offices of all of the above named officers all the powers and duties theretofore granted, assigned and imposed by the existing laws of the state, and ordinances of the city relating to the same, respectively.

Ordinances were adopted on August 8th, 1944, and September 5th, 1944, increasing the salaries of the subordinate municipal officers, including the superintendent of streets, to be known hereafter as superintendent of public works, under authority conferred by *R. S.* 40:46–23; *N. J. S. A.* 40:46–23.

Relator testified that he was in active charge of the Public Works Department, extending to the operation and supervision of street maintenance, street cleaning and repairs, including the street department, ashes and garbage, sewers and drains, snow removal, public works building, incinerator, municipal building, and dog pound, with 125 men under his supervision and control; that twice a month he certified a payroll sheet of $8,000 or $9,000 and submitted it to the Board of Commissioners; that he requisitioned from the city purchasing agent all necessary supplies and materials, aggregating over $25,000 annually; that he regularly had under supervision twenty-five or thirty automobile trucks and automotive equipment; that he supervised and arranged for emergency snow removal and engaged the necessary extra men and equipment, hiring and firing as occasion required; that he issued permits for street openings, sidewalk repair or openings, curbs, or storage of materials on streets; that he gave orders to an assistant superintendent of streets under him and the ten or more foremen of the department; and that he exclusively occupied an office bearing his name and title upon the door.

It seems to be clearly established that relator continuously performed certain permanent duties, not only indicated by the title given to the person occupying the place, but assigned by regulations adopted under the law by an agency created by it and acting in pursuance of it. His duties were substan-

tially those prescribed by the general ordinance of 1894 for the office created by charter and subsequently confirmed by the ordinance of December 8th, 1911, the only change being that of title—the office was the same in fact.

The Supreme Court in *Salter* v. *Burk,* 83 *N. J. L.* 152; 83 *Atl. Rep.* 973, 975, construing the Walsh Act, said:

"But the terms of the act disclose that it was not intended in any sense to be a charter or grant of municipal power, except in a most general way. The management of municipal affairs is entrusted to a Board of Commissioners, but it largely leaves the mechanism of the city's government and the provisions of the charter untouched. It does not alter general laws or charter provisions relating to the government of the city, except when inconsistent with its provisions. Its effect is to impose upon the Board of Commissioners the duty to fill existing offices made vacant by the adoption of the act and the organization of the Board, under the laws and ordinances then in existence."

The office of superintendent of streets was created by the charter of 1873, a law of the state; it was recognized by *R. S.* 40:171–166, *L.* 1899, *ch.* 34; *N. J. S. A.* 40:171–166, authorizing the municipal body of second class cities to fix the term and annual salary of such officer; the duties were specifically assigned in the general ordinance adopted on December 4th, 1894, under authority of the charter, the power thus delegated by the state itself and exercised by an agency created under the law and acting in pursuance of it, having the force of law itself; neither the applicable provisions of the charter nor of the general ordinance were voided by reason of inconsistency with the provisions of the Walsh Act, rather the office and duties were both specifically recognized and reaffirmed by the ordinance of December 8th, 1911; the incumbent was assigned and continuously performed certain permanent public duties—the inescapable conclusion is that the superintendent of public works occupies an office which comes within the legal definition thereof, all of the elements having been factually established, and that the proceeding by *quo warranto* is, therefore, the proper one.

The illustration that most nearly fits the superintendent of

public works, as dealt with in the reported cases, is that of superintendent of buildings, as reported in *Townsend* v. *Boughner,* 55 *N. J. L.* 380; 26 *Atl. Rep.* 808.

Notwithstanding a strong inference that relator was continued in office for long periods without appointment in an apparent effort to circumvent the law fixing a definite term, he held. a valid legal title to the office and is entitled to protection of his enjoyment thereof. Accordingly, I find that the defendant has usurped, intruded into, and unlawfully holds and exercises the office of superintendent of public works, to the exclusion of said relator, and that said relator is the lawful incumbent of this office and entitled to judgment.