74 N.J. Super. 557 (1962)
181 A.2d 800
FRANCIS X. BEIRNE, PLAINTIFF-RESPONDENT,
v.
THOMAS GANGEMI, INDIVIDUALLY AND AS MAYOR OF THE CITY OF JERSEY CITY, AND LAWRENCE J. CAMISA, INDIVIDUALLY AND AS DIRECTOR OF FINANCE OF THE CITY OF JERSEY CITY, DEFENDANTS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Argued May 7, 1962.
Decided June 6, 1962.
*559 Before Judges GOLDMANN, FREUND and FOLEY.
Mr. T. James Tumulty, Assistant Corporation Counsel, argued the cause for appellants (Mr. Meyer Pesin, Corporation Counsel, attorney; Mr. Tumulty and Mr. Walter J. Hudzin, of counsel).
Mr. Joseph A. Davis argued the cause for respondent.
The opinion of the court was delivered by GOLDMANN, S.J.A.D.
The principal issue raised by this appeal is whether plaintiff, who was collector of taxes of Jersey City at the time it changed its form of government under the Faulkner Act, N.J.S.A. 40:69A-1 et seq., is entitled to remain in his position. The Law Division opinion appears at 69 N.J. Super. 220 (1961).

I.
Most of the significant facts of the case have been stipulated. The office of collector of taxes has existed in Jersey City since the granting of the 1871 charter (L. 1871, p. 1094), which empowered the board of aldermen to appoint *560 a "city collector" (sec. 26). Actually, the office dates back to 1851, under the original charter of Jersey City (L. 1851, p. 392, sec. 3). The office has continuously been occupied since at least 1871.
In 1913 the city adopted the Walsh Act (L. 1911, c. 221; R.S. 40:70-1 et seq., as amended), setting up a commission form of government. At the time the act took effect, the office of city collector was held by A. Harry Moore. His term of office came to an end on his election to the first board of commissioners. Indeed, he joined in the resolution adopted June 17, 1913 abolishing his term. The office was not immediately filled, but its duties transferred, by a resolution adopted the same date, to the director of revenue and finance, where they remained until 1917. On May 15, 1917 the board of commissioners appointed one James Radigan as city collector. Thereafter, successive boards of commissioners from time to time made appointments to that office:
Radigan received successive four-year appointments in 1921, 1925, 1929 and 1933. He died in November 1933.
On his death Joseph J. McGuirk was appointed to the unexpired term. He was reappointed in 1937 and served until November 1938, when he resigned.
Michael J. Rochford was then appointed to fill the unexpired term. He was reappointed in 1941, 1945, 1949 and 1953. He died in July 1956.
Beirne was appointed in Rochford's place by resolution adopted August 7, 1956, but the resolution failed to indicate whether this was for the regular four-year term or merely the unexpired term. By letter dated January 21, 1960 the director of revenue and finance advised the board of commissioners that "I have this day appointed Francis X. Beirne Municipal Collector of Taxes of the City of Jersey City for a term in accordance with the statute and laws of New Jersey in such case made and provided, * * * at an annual salary of $8,000 * * *." (Italics ours) On July 19, 1960 the board of commissioners, by resolution, ratified and confirmed this appointment.
The compensation for the office of collector of taxes had been fixed at $7,000 by an ordinance adopted in September 1956. It is agreed that because of plaintiff's appointment *561 on January 21, 1960 at a salary of $8,000, he received an overpayment of $1,446.24 as of June 30, 1961.
Jersey City had adopted the provisions of the Civil Service Act in 1911. The Department of Civil Service carried the Jersey City collector of taxes position on its records as one in the unclassified division of the Civil Service.
Jersey City has operated under Mayor-Council Plan C of the Faulkner Act (N.J.S.A. 40:69A-55 to 60) since noon of July 1, 1961. On July 6, 1961 defendant Camisa, the new director of finance, appointed by defendant Gangemi, mayor of Jersey City, informed plaintiff that his position had terminated as of July 1, 1961. On July 12, and upon written request of the director of finance, plaintiff removed himself from his office premises at the city hall.
The present proceedings, initiated by complaint in lieu of prerogative writs, sought judgment directing defendants to rescind the purported letter of termination and to permit plaintiff to continue in his office of collector of taxes for the balance of his term; setting aside the letter of termination; and determining plaintiff's rights in the premises. Upon cross-motions for summary judgment the Law Division entered a judgment determining that (1) plaintiff was validly appointed to the position for the term fixed by N.J.S.A. 40:46-6.1 ("a period of four years from the first day of January next following his election or appointment") and to continue to December 31, 1964, but at the annual salary of $7,000 fixed by the existing ordinance; (2) plaintiff's position was not abolished nor his term of office terminated on July 1, 1961 by the taking effect of the Faulkner Act plan; (3) plaintiff was to refund to the city the excess salary of $1,446.24 he had received between January 22, 1960 and June 30, 1961; (4) the July 6, 1961 letter of termination was set aside as null and void; and (5) defendants were forthwith to permit plaintiff to return to, serve in and perform the functions of his office, and to receive the lawful compensation therefor.
*562 It should incidentally be noted that Jersey City's new Administrative Code spells out the duties of the "city collector" (collector of taxes) and transfers the office to the new Department of Finance, Division of Revenue.

II.
Defendants contend that the office of collector of taxes ceased to exist when Jersey City adopted the Walsh Act in 1913. This is not so.
A parallel situation was presented in Mattia v. Newark, 119 N.J.L. 268 (Sup. Ct. 1938), involving the office of receiver of taxes of Newark, the charter designation of the official charged with the collection of taxes. By writs of certiorari Mattia sought to review his removal from the office before the expiration of his term. At the time of his appointment the duties of that office had been transferred to the department of revenue and finance pursuant to the provisions of the Walsh Act. The court, citing and quoting from Salter v. Burk, 83 N.J.L. 152 (Sup. Ct. 1912) held:
"* * * By the adoption of the Walsh act, the management of municipal affairs was entrusted to a board of commissioners, but the mechanism of the city's government and the provisions of its charter remained untouched; nor were general laws or charter provisions relating to the government of the city repealed, except when inconsistent with the provisions of the act.
Although the duties of the receiver of taxes in Newark were taken over and performed by the director of revenue and finance after the adoption of the Walsh act, the statutes and ordinances relating to the office of receiver of taxes still remained in full force. Salter v. Burk, 83 N.J.L. 152. * * *"
The court concluded that the office of receiver of taxes continued to exist even after the commission form of government was adopted by Newark. See also, Burke v. Kenny, 9 N.J. Super. 160, 163-164 (App. Div. 1950).
The transitional section of the Walsh Act, L. 1911, c. 221, sec. 2 (R.S. 40:71-9) provided that the term of any officer, *563 whether elective or appointive, shall immediately cease and determine upon adoption of the act. The statute did not abolish the office itself. We find no ordinance or statute abolishing the office of collector of taxes (city collector) of Jersey City; the office has continued in existence and been filled since, as hereinbefore indicated. There is nothing to support the conclusion that the Walsh Act was inconsistent with the provision of the 1871 Charter of Jersey City establishing that office. It is clear that the office survived the 1913 change of government.
Defendants' reliance upon Feeney v. Burke, 89 N.J.L. 359 (E. & A. 1916), followed in Connors v. Bayonne, 36 N.J. Super. 390 (App. Div. 1955), is misplaced. All that Feeney held was that the position of comptroller in Jersey City (like that of the treasurer and collector) was not a principal executive office after the adoption of the Walsh Act; the comptroller became a "mere employe of the commissioners." We therefore conclude that Jersey City's adoption of the Walsh Act did not abolish the office of the collector of taxes.

III.
Defendants next argue that Jersey City's adoption of the Faulkner Act in 1961 put an end to plaintiff's office, and he may not claim the protection of section 40:69A-207 of that act because he did not enjoy an office protected by tenure or Civil Service. N.J.S.A. 40:69A-207 reads, in significant part:
"At 12 o'clock noon on the effective date of an optional plan adopted pursuant to this act, all offices then existing in such municipality shall be abolished and the terms of all elected and appointed officers shall cease and determine; provided, that nothing in this section shall be construed to abolish the office or terminate the term of office * * * of any official or employee now protected by any tenure of office law * * *. If the municipality is operating under the provisions of Title 11 of the Revised Statutes (Civil Service) at the time of the adoption of an optional plan under this act, nothing herein contained shall affect the tenure of office of any *564 person holding any position or office coming within the provisions of said Title 11 as it applies to said officers and employees. * * *" (Italics ours)
Positions in the unclassified service are protected by R.S. 11:28-2:
"* * * when the form of government of any municipality * * * shall be changed, the officers and employees or persons in the * * * unclassified service of any subdivision of the government of this state where the civil service laws are operating shall be continued in service and all rights enjoyed as to pensions, terms of service and salaries shall continue notwithstanding such * * * change of form of government."
This statute was originally enacted as L. 1934, c. 110, whose title evidences the legislative intent:
"An Act to provide protection and conserve the rights of public servants in the service of the State and the counties and municipalities thereof."
N.J.S.A. 11:22-2(o) provides that the unclassified service shall include
"Such other officers and positions not now included in the unclassified service by this section or by any other statute, as the Civil Service Commission shall, from time to time, determine, according to law, to be in the unclassified service."
Civil Service Rule 7(2)(t) so characterizes all offices not specifically included in the rule and "for which some statute prescribes a fixed term." The office of collector of taxes has a fixed statutory term  four years. N.J.S.A. 40:46-6.1. The Civil Service Department has recorded the appointment of tax collectors in all municipalities under its jurisdiction as in the unclassified service, in accordance with that statute and the cited Civil Service rule. Specifically as to Jersey City, the office of the collector of taxes has consistently been recorded by the Department as in the unclassified service. The stipulation in the record so reveals.
*565 A provision similar to the first italicized clause of N.J.S.A. 40:69A-207, above, is contained in the Walsh Act, N.J.S.A. 40:71-9, third paragraph. On the basis of the latter section and R.S. 11:28-2, the court in Devlin v. Cooper, 124 N.J.L. 155 (Sup. Ct. 1940), affirmed 125 N.J.L. 414 (E. & A. 1940), determined that a police justice's position, in the unclassified service of Civil Service, and his term of office were not abolished or terminated when the City of Trenton abandoned the council-manager form of government in 1939 and again adopted the commission form under the Walsh Act.
When the second italicized portion of N.J.S.A. 40:69A-207, above, is compared with the similar provision in the Walsh Act, N.J.S.A. 40:71-9, it will be seen that the former gives broader protection than the latter. The language of the Faulkner Act protects "any person holding any position or office coming within the provisions of said Title 11." The Walsh Act language is, "any person holding any position or office coming with the classified service of the civil service law." The broader language of the Faulkner Act includes officers and employees in the unclassified as well as the classified service.
R.S. 11:28-2 is not only a general law but a tenure of office law, as expressly held in the Devlin case. The Faulkner Act, N.J.S.A. 40:69A-26, specifically provides that any municipality adopting one of its optional forms shall be governed by the plan adopted, the Faulkner Act provisions, and "by all applicable provisions of general law." "General law" is defined in N.J.S.A. 40:69A-28 as "any law or provision of law, not inconsistent with this act, heretofore or hereafter enacted which is by its terms applicable or available to all municipalities, * * *."
Further, N.J.S.A. 40:69A-55, dealing with laws applicable in Mayor-Council Plan C cities like Jersey City, provides that N.J.S.A. 40:69A-43 shall apply. Sub-paragraph (d) of the latter act, dealing with the appointment and removal of subordinate officers and employees, *566 makes such powers "subject to the provisions of the Revised Statutes, Title 11, Civil Service, where that Title is effective in the municipality, or other general law."
As in Devlin v. Cooper, plaintiff, holder of an office in the unclassified service, was protected under N.J.S.A. 40:69A-207 and R.S. 11:28-2.
Defendants rely upon the recent case of Myers v. Cedar Grove Tp., 35 N.J. 51 (1961). That decision is not apposite. The sole question in Myers was whether the local board of health survived a changeover from the Walsh Act to the Faulkner Act. The court held that the board, not being within the exceptions of N.J.S.A. 40:69A-207, was abolished upon the effective date of the Faulkner plan.

IV.
Defendants' next contention is that the term of office of collector of taxes in Jersey City is governed by R.S. 40:171-110, and not by N.J.S.A. 40:46-6.1, as plaintiff insists and the trial court held. R.S. 40:171-110 provides that in first-class cities the terms of office of all city officers "appointed by the mayor," whether for a definite or an indefinite term, "shall expire with the term of such mayor." In short, defendants claim that plaintiff's office, being co-extensive with that of the mayor, terminated with the commission form when the Faulkner Act plan went into effect after June 30, 1961. The argument has no merit. Plaintiff was not an appointee of the mayor, but of the then director of revenue and finance, who reported the appointment to the city commission which, in turn, duly ratified and confirmed what he had done. Accordingly, McCarthy v. Queen, 76 N.J.L. 144 (Sup. Ct. 1908), upon which defendants rely, has no application.

V.
A question which was incidentally raised by defendants in their brief and at oral argument was: To what date was *567 plaintiff to continue in office on the basis of his appointment by the director of revenue and finance on January 21, 1960? This, of course, implicates the provisions of N.J.S.A. 40:46-6.1, which plaintiff and the trial court consider as controlling.
N.J.S.A. 40:46-6.1 provides that any person appointed to the position or office of tax collector in any municipality "shall hold his office for a period of four years from the first day of January next following his election or appointment." The term "tax collector" is defined, for the purposes of this statute, as "the official charged with the duty of collecting taxes upon real and personal property in each municipality of this State." Plaintiff, therefore, was the "tax collector" of Jersey City under its prior commission form of government.
Plaintiff's predecessor, Rochford, was last appointed in May 1953. Therefore, under the unambiguous language of N.J.S.A. 40:46-6.1, his term would have expired January 1, 1958. However, he died while in office, on July 18, 1956. Plaintiff was first appointed by resolution adopted August 7, 1956. Since there was a vacancy as of that date, plaintiff's appointment must have been for Rochford's unexpired term, "and until the qualification of a successor," N.J.S.A. 40:46-6.1, and this despite the absence of language in the commission resolution indicating the term. Plaintiff's reappointment on January 21, 1960 entitled him to hold office "for a period of four years from the first day of January next following his * * * appointment." Ibid. He would, therefore, be entitled to hold office until December 31, 1964  and such was the trial judge's determination.
Defendants, however, claim that in the light of Wilensky v. Gurtman, 13 N.J. 405 (1953), and DeMuro v. Janeczek, 4 N.J. Super. 266 (App. Div. 1949), certification denied 3 N.J. 371 (1950), N.J.S.A. 40:46-6.1 should be held inapplicable to appointments made in Walsh Act communities because the January 1 date cannot conveniently be integrated *568 into the May election plan of that act. Wilensky and DeMuro involve N.J.S.A. 40:46-6, and not 40:46-6.1. The history of the latter act must be reviewed.
N.J.S.A. 40:46-6.1 stems from L. 1937, c. 142. As originally passed, this section provided that the tax collector "shall hold his office for a period of four years from the date of his election or appointment." The statute was amended by L. 1945, c. 138, sec. 1, to provide that the four-year term of office run from January 1 next following election or appointment. The statement accompanying the bill read as follows:
"From the date R.S. 40:46-6.1 was adopted, tax collectors in most municipalities should have taken office from the date of election or appointment. Instead of doing so many have taken office on January first with the result that it is open to question as to whether or not such officers hold office legally. As a matter of fact, it would be practically impossible to observe the law since an elected official cannot take office until his election has been certified by the county board of elections which is never done on election day. In addition having two collectors in one year might require double audits causing considerable additional expense to the municipalities. The statute was intended to merely change the term of office of the collector and not to change the date when he was to take office and should be amended to provide as stated above." (Italics ours)
It can be seen from this statement that one of the reasons for choosing the January 1 date was to avoid the need of municipalities having to run double audits on taxes assessed and received. January 1 was not chosen because it was the date that officers elected in the preceding November took office.
Turning to L. 1937, c. 142, the predecessor statute of L. 1945, c. 138 (N.J.S.A. 40:46-6.1), the statement attached to the legislative bill noted that:
"The term of office of tax collector in various types of municipalities varies to such a confusing extent that some legislation is desirable in the interest of uniformity * * *."
The statement continued with the allegation that the bill was introduced to reenact chapter 141 of the Laws of 1936, which had the same purpose as the 1937 legislation.
*569 However, it was thought by the legislators at the time of the 1937 bill's passage  and this is reflected in the statement to the latter bill  that the 1936 act had been declared unconstitutional, probably under the authority of Raymond v. Teaneck, 118 N.J.L. 109 (E. & A. 1937), affirming 14 N.J. Misc. 487, 186 A. 62 (Sup. Ct. 1936). Even though the 1936 statute was later declared to be constitutional in McCarthy v. Roberson, 123 N.J.L. 132 (Sup. Ct. 1939), and Stevenson v. Bridgeton, 123 N.J.L. 219 (E. & A. 1939), the 1937 statute was passed, replacing the 1936 enactment. The statement filed with the 1937 bill continued:
"* * * The purpose of this bill is to re-enact the 1936 legislation without the legally objectionable features."
The 1936 bill had likewise been accompanied by a statement, and this statement should remove all doubt that the purpose of what is now N.J.S.A. 40:46-6.1 was not to make the starting date of the tax collector's term coincide with that of other public officials, for it read:
"Feeling that the office of tax collector should be as far as possible removed from political influence in order to render a better degree of service, this bill is designed to accomplish that, and it is in the interest of more efficient tax assessments and the further improvement of the tax machinery of the State."
It appears, therefore, that the fact that the January 1 date is mentioned in both N.J.S.A. 40:46-6 and 40:46-6.1 is nothing more than a coincidence. The inclusion of this date in the latter statute was an attempt to establish qualifying dates for tax collectors so that municipalities, as has been said, would be spared the expense of double tax audits, and to make tax collectors' terms of office uniform throughout the State.
It is to be noted that N.J.S.A. 54:4-23 fixes the tax assessment date as October 1 of each year, but the "tax year" is defined by statute as the calendar year in which the *570 taxes are due and payable. N.J.S.A. 54:4-3.12(i)(g) and 54:4-3.36. Since tax years are calendar years, it is only reasonable that tax collectors should start their terms on January 1, whether the particular municipality is operating under the Walsh Act, the Faulkner Act, or any other type of arrangement. Such uniformity is in accord with the express purpose of N.J.S.A. 40:46-6.1.
Accordingly, we hold that the Wilensky and DeMuro cases, upon which defendants rely, are inapplicable to the present situation, and N.J.S.A. 40:46-6.1 controls plaintiff's term of office.

VI.
Defendants next claim is that even if N.J.S.A. 40:46-6.1 is held applicable, nonetheless R.S. 40:46-10 terminated plaintiff's employment as of the first annual election under the new form. Thus, runs the argument, the statute brought an end to plaintiff's term on July 1, 1961. The statute dates back to L. 1897, c. 34, and has never been changed.
There are several answers to defendants' contention. As originally passed, the 1897 statute could well be taken as referring to elected officials. Further, the act, then and in its Revised Statutes form, refers to a change in the form of municipal government resulting in "other corporate powers conferred." As we read R.S. 40:46-10, it would appear to apply to situations where there is a change in corporate organization, as from village to borough, town to city, or from one class of municipality to another. Jersey City did not pass through such a change; it was and remains a city of the first class. In any event, the provisions of the Faulkner Act, a general and much later enactment intended to bring modern forms of government to municipalities, has controlling effect. Particularly is this so of N.J.S.A. 40:69A-207. Similar reasoning attends R.S. 11:28-2.

*571 VII.
Finally, defendants contend that plaintiff's appointment was illegal because the annual salary fixed by and paid under the January 21, 1960 letter of the director of revenue and finance ($8,000) was in excess of that authorized by law  i.e., the $7,000 salary authorized by municipal ordinance adopted September 18, 1956. In support, they cite Daly v. New Brunswick, 3 N.J. 397 (1950).
Plaintiff in Daly had been appointed a tax assessor at a salary of $1,600 a year, by resolution of the city commission two months after its organization meeting. The commissioner to whose department (Revenue and Finance) the three tax assessors had been assigned at the organization meeting did not make the appointment, although he did vote in favor of the resolution. At the time of Daly's appointment the city had not as yet created the offices or positions of tax assessor by ordinance or resolution. Some 19 months later the city commission adopted an ordinance creating a board of tax assessors, consisting of three members. Acting under the authority of that ordinance, the director of revenue and finance appointed as tax assessors two of the incumbents and, in place of Daly, one Chibbaro. At the same time he directed that Daly's name be stricken from the city payroll.
The main argument in Daly revolved around the question of whether the city commission had the power to make the appointment. Defendants argue that the appointment was invalid because the appointive power was not vested in the whole commission under the Walsh Act. Plaintiff, on the other hand, asserted that the requirement that the particular commissioner involved  the director of revenue and finance  make the appointment, was satisfied because he had joined in and voted for the appointment resolution. The Supreme Court held that under the commission form the power to appoint resides solely in the director of the department to which the particular position *572 has been assigned, and a resolution of the board of commissioners does not satisfy this requirement, except where the appointment is made by the governing body at its organization meeting. Since plaintiff had been appointed subsequent to such a meeting, he did not fall within the exception. Nor did the fact that the director of revenue and finance voted in favor of the resolution validate the otherwise illegal appointment.
Chief Justice Vanderbilt then went on to say:
"But even if this obstacle were not in the way of granting relief to the plaintiff, he still could not recover for the reason that his alleged appointment as an assessor was contrary to statute and illegal in that his compensation was fixed at $1,600 per annum, in spite of the fact that the statute authorized the maximum salary of $1,000."
This final paragraph of the opinion was unnecessary to the decision, and clearly dictum. Although dicta of our court of last resort are entitled to due consideration, Lehigh Valley R. Co. v. Chapman, 35 N.J. 177, 187 (1961), they do not invoke the principle of stare decisis. Cf. Jamouneau v. Division of Tax Appeals, 2 N.J. 325, 332 (1949).
We do not know what led the director of revenue and finance to fix the annual salary at $8,000 when he first appointed plaintiff. His memory of the correct salary may have been faulty, or as department head he may have been seeking to fix the salary at a level consistent with that received by persons in equally responsible positions. We have already noted that the appointment was ratified and confirmed by subsequent resolution of the city commission on July 19, 1960. But be that as it may, the director of revenue and finance made a conscious effort to follow the law when, in his letter of appointment, he stated he was appointing plaintiff "for a term in accordance with the statute and laws of New Jersey in such case made and provided." This partially distinguishes the obviously ultra vires appointment made in Daly.
*573 We consider the decision in Newman v. Fair Lawn, 31 N.J. 279 (1960), sufficiently analogous to serve as a persuasive guide to the resolution of the issue before us. In that case the Supreme Court held that where statutory provisions relating to one class of members of a municipal planning board required that their terms expire at the end of calendar years, but the municipality provided for the expiration of terms on March 1, the appointments were nonetheless valid and for the full legal term, despite the appointing body's attempt to give them a different duration.
Justice Burling, writing for the court in Newman, particularly addressed himself to certain New Jersey decisions supporting the principle that where an appointing body fails to appoint for the proper term, the appointments are void from their inception. He examined Salter v. Burk, 83 N.J.L. 152 (Sup. Ct. 1912), the case on which the entire line of authority rested. That case involved the office of city clerk, whose term was three years. The city commission appointed Salter to a lesser term, and at the end of that term made a new appointment. Salter challenged the right of the new appointee to the office, claiming he had the right to a full three-year term. The court held void the limitation put on Salter's term because not in accordance with the three-year term prescribed by law.
The Newman court struck down this part of the Salter conclusions and the line of authority upholding the principle it had enunciated. Justice Burling observed that "no authority was given [in Salter] for the conclusion that the attempted limitation on the duration of the term rendered the entire appointment void. Indeed, an examination of the cases reveals that the weight of authority elsewhere supports the contrary conclusion." He concluded that
"* * * the Salter case, insofar as it held void an appointment to an office of a different term from that set by statute, is based upon an erroneous conception of the applicable principle of law, and we do not adopt it, applying instead the principle stated in the Stadler case [Stadler v. City of Detroit, 13 Mich. 346 (Sup. Ct. 1865)] by *574 Justice Cooley, i.e., that the appointment is for the full legal term, notwithstanding the appointing body's attempt to give it a different duration." (at page 288)
Among other cases, the Newman court cited Dodsworth v. Mayor of Medford, 308 Mass. 62, 30 N.E.2d 835 (Sup. Jud. Ct. 1941), relied upon by the trial judge.
We are cited to no case  the Daly dictum aside  holding that an appointment, otherwise valid, is rendered invalid merely because a wrong annual salary was fixed. The only asserted defect in plaintiff's original appointment was the erroneous statement of salary. Had the words "at an annual salary of $8,000" been omitted, the appointment would have been valid for the lawful salary, since it was unnecessary to mention a salary already fixed by ordinance.
The error in stating plaintiff's salary resulted in an overpayment to him of $1,446.24 down to June 30, 1961. The trial court directed that he refund that sum. We agree with this common sense result. Cf. Demarest v. Inhabitants of New Barbadoes, 40 N.J.L. 604 (E. & A. 1878); Camden v. Varney, 63 N.J.L. 325 (E. & A. 1899). Plaintiff does not disagree with the trial court's ruling.

VIII.
In conclusion, we hold that under N.J.S.A. 40:69A-207, R.S. 11:28-2 and N.J.S.A. 40:46-6.1, plaintiff has the right to the position of city collector (collector of taxes) of Jersey City until December 31, 1964, provided he does not resign or die, or is removed from office for cause. The judgment of the Law Division is therefore affirmed.